**PROYECFIN DE VENEZUELA, S.A.,**
**Plaintiff-Appellant,**

**v.**

**BANCO INDUSTRIAL DE VENEZUELA, S.A., Defendant-Appellee.**

**No. 889, Docket 84–7946.**

United States Court of Appeals,
Second Circuit.

Argued March 6, 1985.

Decided April 4, 1985.

Sidney B. Silverman, New York City (Joan T. Harnes, Jay H. Schafrann, Martin H. Olesh, and Silverman & Harnes, New York, N.Y., on the brief), for plaintiff-appellant.

P.B. Konrad Knake, New York City (George O. Richardson, III, and White & Case, New York, N.Y., on the brief), for defendant-appellee.

Before TIMBERS, NEWMAN and KEARSE, Circuit Judges.

TIMBERS, Circuit Judge:

This is an appeal from a judgment entered in the Southern District of New York, Vincent L. Broderick, *District Judge*, denying appellant's motion to remand the action to the Supreme Court of the State of New York, County of New York, from which the action had been removed, and sua sponte dismissing the action with prejudice for lack of subject matter jurisdiction. The issues presented are (1) whether appellee, an instrumentality of a foreign sovereign, has waived its right to immunity under the Foreign Sovereign Immunities Act of 1976 (1982); (2) whether appellee agreed to litigate in New York; and (3) whether appellee waived its right to remove the action from the state court to the federal court. For the reasons stated below, we affirm in part and reverse and remand in part.

## I.

The summary of facts which follows is based upon the complaint whose allegations are taken as true for purposes of appeal. We summarize only those facts believed necessary to an understanding of our rulings on the legal issues raised on appeal.

Appellant Proyecfin de Venezuela, S.A. ("Proyecfin") is a corporation organized under the laws of Venezuela. Since 1970, Proyecfin has been engaged in the development and construction of a large, privately-

owned residential development in the City of Maracay, Venezuela. Appellee Banco Industrial de Venezuela, S.A. ("BIV") is a commercial bank organized under the laws of Venezuela. The government of Venezuela owns nearly all of the BIV stock. BIV has offices at 400 Park Avenue in the City of New York. It is chartered to engage in the business of banking in the State of New York.

On March 19, 1980, Proyecfin and BIV entered into a contract (the "Loan Agreement") with a consortium of Middle East banks (the "Consortium"). The Consortium is not a party to this action. Under the Loan Agreement, the Consortium would lend and Proyecfin would borrow up to $43 million to finance construction in Maracay. This amount was increased to $63 million in 1981. The loan by the Consortium was conditioned upon the promise by BIV to act as guarantor.

At the same time that the Loan Agreement was entered into, Proyecfin and BIV entered into a Contract of Supervision (the "Supervisory Contract"), under which BIV undertook to act as trustee for all money received and disbursed for the project; to make progress payments to Proyecfin based upon work performed; and to monitor the work performed by Proyecfin and the costs and expenses incurred in the project. The Supervisory Agreement was made a condition to the effectiveness of the Loan Agreement. A breach by Proyecfin of the former would constitute a default as to the latter. Similarly, the Supervisory Agreement contained a clause that provided that the Loan Agreement "with all its exhibits is deemed to be totally reproduced herein and is considered as forming an integral part of this contract."

On July 3, 1984, Proyecfin commenced an action against BIV in the Supreme Court of the State of New York, County of New York, alleging wrongful refusal of BIV to advance payments due under the contract, failure to provide documentation necessary for the sale of housing units, breach of fiduciary duty, conversion and wrongful exaction of fees and interest. On July 27, BIV filed a petition and bond for removal of the action to the Southern District of New York, asserting subject matter jurisdiction pursuant to 28 U.S.C. § 1330 (1982) (actions against foreign states) and removal jurisdiction pursuant to 28 U.S.C. § 1441(d) (1982).

On August 28, Proyecfin moved to remand the action to the state court. Both sides submitted affidavits. Oral argument was heard by the court on October 16. At the conclusion of the argument, Judge Broderick from the bench denied the motion to remand and dismissed the action sua sponte with prejudice for lack of subject matter jurisdiction. On November 14, a written order was entered in accordance with the court's oral decision of October 16. From the judgment entered thereon, this appeal was taken.

## II.

We start with a consideration of the question of subject matter jurisdiction, for lack of which, in the view of the district court, the action was dismissed. We disagree.

Under the Foreign Sovereign Immunities Act of 1976, Pub.L. No. 94–583, 90 Stat. 2891 (codified at 28 U.S.C. §§ 1330(a)–(c), 1332(a)(4), 1391(f), 1441(d), 1602–1611 (1982)) (the "Act"), the district courts of the United States are vested with subject matter jurisdiction in any civil action against a foreign state or its instrumentality[1] "with respect to which the foreign

---

1. Under 28 U.S.C. § 1603(a) and (b) (1982), the term "foreign state" includes an "instrumentality" of a foreign state which in turn means any entity:

   "(1) which is a separate legal person, corporate or otherwise, and

   (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

   (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country."

state [or instrumentality] is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement." 28 U.S.C. § 1330(a) (1982). Section 1605(a)(1) provides that a foreign state is not immune from jurisdiction in any case "in which the foreign state has waived its immunity either explicitly or by implication". 28 U.S.C. § 1605(a)(1) (1982).

The Loan Agreement, which was subscribed by Proyecfin, BIV and the Consortium, contains the following provision:

**"30. Jurisdiction**

. . . .

(C) To the extent that any Borrower or the Guarantor may in any jurisdiction claim for itself or its assets immunity from suit, execution, attachment (whether in aid of execution, before judgment or otherwise) or other legal process and to the extent that in any such jurisdiction there may be attributed to itself or its assets the immunity (whether or not claimed) such Borrower and such Guarantor as the case may be hereby waives such immunity to the full extent permitted by the laws of such jurisdiction and, in particular, to the intent [sic] that in any proceedings taken in New York the foregoing waiver of immunity shall have effect under and be construed in accordance with the United States Foreign Sovereign Immunities Act [of] 1976."

The Loan Agreement also contains a clause that provides: "**27. Benefit of Agreement** (A) This Agreement shall be binding upon and enure to the benefit of each party hereto and its successors and assigns."

It appears, therefore, that under §§ 1605(a)(1) and 1330(a) the district court had jurisdiction by virtue of the fact that BIV had waived the defense of sovereign immunity. The district court, however, held that subject matter jurisdiction was lacking because it found, and appellee continues on appeal to argue, that the waiver provision of the Loan Agreement does not apply to this action which was brought because of violations of the Supervisory Agreement. We disagree.

First, the waiver provision is not limited by its terms to actions arising under the Loan Agreement and does not preclude incorporation into the Supervisory Agreement. Second, the clause in the Supervisory Agreement that provides that the Loan Agreement is "totally reproduced herein" is so broad, unqualified and unambiguous as to require the conclusion that *all* of the provisions, including the waiver of immunity, are carried over to the Supervisory Agreement. We further are persuaded by the fact that the related agreements were nearly contemporaneous and that there is an identity of parties to the two agreements. Thus, regardless of whether the complaint states a claim upon which relief can be granted under only the Supervisory Agreement, or under both the Supervisory and Loan Agreements as appellant contends, we hold that the waiver of immunity is applicable to the present action.[2]

Appellee also argues that the benefit of the waiver provision was intended to run only to the Consortium as lender and not to Proyecfin as borrower. Although the parties filed affidavits in the district

---

BIV therefore qualifies as a "foreign state" under the Act by virtue of the government of Venezuela's majority ownership.

For convenience, we occasionally shall refer to BIV as a "sovereign" in this opinion. By this, we mean that BIV is treated the same as the foreign state itself under the Act. *Carey v. National Oil Corp.,* 592 F.2d 673, 676 n. 1 (2 Cir. 1979) (per curiam).

**2.** We also note that, under § 1605(a)(1), sovereign immunity may be waived "by implication". Congress intended that this term be read broad-

ly so as to recognize a waiver where the foreign state simply "has agreed to arbitration in another country or where a foreign state has agreed that the law of another country should govern a contract." H.R.Rep. No. 1487, 94th Cong., 2d Sess. 18, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6617. In view of this broad reading of implicit waivers, we would have no difficulty in holding that there was such a waiver here, wholly aside from our conclusion that the express waiver applies to an action under the Supervisory Agreement.

court on the issue of their intent, the language of the agreement is unambiguous, as appellee concedes. Parol evidence need not be considered. The Loan Agreement, the provisions of which are incorporated in the Supervisory Agreement, expressly states that its provisions run to the benefit of *all* of the parties to the agreement. We find no basis for second guessing the unambiguous language of the agreement.

■ Having held that BIV waived the defense of sovereign immunity in this action, we focus next on the central question of whether the district court had subject matter jurisdiction. Such jurisdiction, under § 1605(a)(1), is premised solely upon an express or implied waiver. The fact that both parties are foreign corporations does not preclude jurisdiction. In *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983), the Supreme Court held that "[i]f an action satisfies the substantive standards of the Act, it may be brought in federal court regardless of the citizenship of the plaintiff", *id.* at 490–91, and that "a suit against a foreign state under this Act necessarily raises questions of substantive federal law at the very outset, and hence clearly 'arises under' federal law, as that term is used in Art. III." *Id.* at 493. *Verlinden*, however, did not involve the question of whether, under § 1605(a)(1), subject matter jurisdiction exists when the transaction upon which the action is based involves activities wholly unrelated to the United States. *Id.* at 490 n. 15. The nexus between the transaction in this case and the United States is a contractual requirement that loan payments be made by Proyecfin at BIV's New York branch and then be transferred to an account maintained by the Consortium, also a foreign entity, in another New York bank. Those payments, however, apparently were not made. Moreover, BIV expressly consented to litigate in New York.

While this nexus might be insufficient to sustain jurisdiction under other provisions of the Act, that question is not before us.[3] *See Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 312 (2 Cir.1981), *cert. denied*, 454 U.S. 1198 (1982). Section 1605(a)(2), for example, creates an exception to immunity for, among other things, extraterritorial commercial conduct that causes a direct effect in the United States. Section 1605(a)(1), on the other hand, does not expressly require a nexus between the conduct or transaction that is the subject of the action and some interest in the United States. We need not decide whether to read such a requirement into the Act since a sufficient nexus exists in this case. Where, as here, a jurisdictional statute is invoked under circumstances consistent with Article III judicial power, *Verlinden, supra*, 461 U.S. at 493, federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). *See also England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411, 415 (1964); *Cohens v. Virginia*, 19 U.S. 264, 404, 6 Wheaton 120, 181 (1821).

■ We are not concerned that United States courts will become the courts of choice for local disputes between foreign plaintiffs and foreign sovereign defendants and thus be reduced to "international courts of claims". *Verlinden, supra*, 461 U.S. at 490. The traditional doctrine of forum non conveniens, *see, e.g., Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947); *Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147 (2 Cir.1980) (en banc), is still applicable in cases arising under the Foreign Sovereign Immunities Act. *Verlinden, supra*, 461 U.S. at 490 n. 15. Appellee, of course, may raise that issue in the district court on remand from this Court.

3. Appellant argues in its reply brief that subject matter jurisdiction may be present under § 1605(a)(2) of the Act but that it has had insufficient opportunity to develop the record on this point. Since we find that subject matter jurisdiction is present under § 1605(a)(1), we do not reach the § 1605(a)(2) claim.

We hold that the district court has subject matter jurisdiction over the instant action.

### III.

We turn next to the question of whether BIV consented to litigate disputes under the Supervisory Agreement in New York[4] or whether, as BIV contends, the parties agreed to litigate only in Caracas, Venezuela.

The Loan Agreement subscribed by Proyecfin, BIV and the Consortium contains the following provision (being part of the same Jurisdiction section referred to above):

"**30. Jurisdiction**

(A) Each Borrower and the Guarantor agrees that any legal action or proceedings arising out of or in connection with this Agreement may be brought in the High Court of Justice in England, the Courts of the State of New York, the Courts of the United States of America in New York or the Courts of the City of Caracas, Venezuela, irrevocably submits to the jurisdiction of each such court and agrees that any writ, judgment or other notice of legal process shall be sufficiently served on it (i) in connection with proceedings in England, if delivered to the Law Debenture Corporation. [sic]

Limited at Estates House, 66 Gresham Street. London EC2V 7HX or other its registered office for the time being and (ii) in connection with proceedings in New York, if delivered to CT Corporation System at 277 Park Avenue, New York, N.Y. 10017, U.S.A. or other its principal place of business in New York for the time being."

Since we have held that all of the provisions of the Loan Agreement are incorporated by reference in the Supervisory Agreement and run to the benefit of all the parties including Proyecfin, this would seem to end the matter. The Supervisory Agreement, however, in paragraph "Thirty-Fourth", provides as follows:

"For all the purposes that are derived from the present Agreement, there is selected as the special and exclusive domicile the City of Caracas, Venezuela to whose Court the parties specifically declare are subject."

Appellee argues that this provision overrides the "Jurisdiction" provision of the Loan Agreement,[5] and that the court in Caracas therefore is the only forum in which Proyecfin may bring this action. We disagree.

■ We start our analysis with a basic tenet of contract law: where two seeming-

---

**4.** In its scheduling order of August 15, 1984, the district court noted that BIV's counsel made an appearance "without waiving defendant's right to contest this court's jurisdiction over it." We note that 28 U.S.C. § 1330(b) (1982) provides that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have [subject matter] jurisdiction" if service of process has been effected. Of course, it still must be determined whether the requirements of due process have been met, *Texas Trading, supra,* 647 F.2d at 313–15, despite the statement in the House Report that the "requirements of minimum jurisdictional contacts and adequate notice are embodied" in the Act. House Report, *supra,* at 13, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 6612. The "minimum jurisdictional contact[ ]" embodied in § 1605(a)(1) is the requirement that the sovereign has waived immunity. Furthermore, the venue statute authorizes venue in the district where a foreign state instrumentality is licensed to do business or is doing business. 28 U.S.C. § 1391(f)(3) (1982).

**5.** Appellee also argues that the "Jurisdiction" provision should not be incorporated by reference in the Supervisory Agreement. In support of this argument, appellee cites *United States Steel Corp. v. Turner Constr. Co.,* 560 F.Supp. 871 (S.D.N.Y.1983), where the court declined to incorporate in a subcontract a forum selection clause found in a contract between a real property owner and a general contractor. *Id.* at 874. *Turner* is readily distinguishable. First, the court based its decision on a New York rule of law that applies to construction subcontracts and has no bearing on this international lending agreement. Second, the parties to the subcontract were not also parties to the primary contract as in the instant case. Finally, and most decisively, the incorporation clause in the present case is so unequivocal as to preclude any other possible reading. *Washington Metropolitan Area Transit Authority v. Norair Eng'g Corp.,* 553 F.2d 233 (D.C.Cir.1977), also cited by appellee, we find to be inapposite.

ly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect. 3 Corbin on Contracts § 547, at 172–73 (1960); see, e.g., City of Columbia v. Paul N. Howard Co., 707 F.2d 338, 340 (8 Cir.) (per curiam), cert. denied, 104 S.Ct. 238 (1983); Papago Tribal Utility Authority v. Federal Energy Regulatory Comm'n, 610 F.2d 914, 929 (D.C.Cir.1979), cert. denied, 104 S.Ct. 3511 (1984). This applies with equal force where two documents are contemporaneous and related or where one incorporates the terms of the other. E.g., Pines v. Warnaco, Inc., 706 F.2d 1173, 1176 n. 3 (11 Cir. 1983); Trans-Bay Eng'rs & Builders, Inc. v. Hills, 551 F.2d 370, 379 (D.C.Cir.1976).

■ The "Jurisdiction" section of the Loan Agreement provides that "any action arising out of or in connection with this Agreement *may be brought* " (emphasis added) in one of several locations outside of Venezuela or in Caracas. This language is permissive. It leaves open the possibility that an action could be brought in any forum where jurisdiction can be obtained either inside or outside of Venezuela. Paragraph "Thirty-Fourth" of the Supervisory Agreement, on the other hand, states that Caracas is the "special and exclusive domicile" of the parties. While this language appears to be mandatory, it is not irreconcilable with the "Jurisdiction" section.

First, no conflict between the two provisions would arise if Caracas were selected as the forum for the litigation. The "Jurisdiction" section permits jurisdiction in Caracas but does not mention Maracay or any other place within Venezuela. If it had, and paragraph "Thirty-Fourth" limited "domicile" to Caracas, then the two provisions might be said to directly conflict and the second might be said to modify the first. That is not the case here.

Second, the apparent conflict arises, and the use of the term "domicile" becomes crucial, only when the plaintiff's choice of forum is a court outside of Venezuela. "Domicile", in this context, is a term that ordinarily is associated with the concept of

venue within a national court system such as that maintained by Venezuela. Thus, to reconcile the provisions, paragraph "Thirty-Fourth" must be read as inapplicable to any action brought outside of Venezuela, as permitted by the "Jurisdiction" section.

We hold that the two provisions do not conflict and that paragraph "Thirty-Fourth" does not bar an action between these parties in either a federal or a state court in New York.

## IV.

This brings us, finally, to the question of whether the district court erred in denying appellant's motion to remand the action to the state court. We affirm that portion of the district court judgment.

Appellant argues forcefully that a valid forum selection clause, which in this case permitted jurisdiction in either the federal or state court in New York, constitutes an express waiver of the right to remove. E.g., Capital Bank & Trust Co. v. Associated Int'l Ins. Co., 576 F.Supp. 1522, 1524–25 (M.D.La.1984); Lavan Petroleum Co. v. Underwriters at Lloyds, 334 F.Supp. 1069, 1073–74 (S.D.N.Y.1971). Whatever may be said of the virtue of those decisions which involved private parties and different contract language, our decision in the instant case must be governed by different considerations.

In enacting the Foreign Sovereign Immunities Act of 1976, "Congress deliberately sought to channel cases against foreign sovereigns away from the state courts and into federal courts...." Verlinden, supra, 461 U.S. at 497. As part of the overall statutory scheme, Congress amended the removal statute, 28 U.S.C. § 1441 (1982), to include a provision enabling a foreign state to remove "[a]ny civil action brought in a State court against a foreign state." Id. § 1441(d). Moreover, in the case of a foreign state defendant, the time limitations for filing a petition for removal under § 1446(b) "may be enlarged at any time for cause shown." Id. § 1441(d).

Congress's intent to create a broad removal right is further substantiated by reference to the legislative history of the Act:

"In view of the potential sensitivity of actions against foreign states and the importance of developing a uniform body of law in this area, it is important to give foreign states clear authority to remove to a Federal forum actions brought against them in the State courts."

House Report, *supra,* at 32, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 6631.

While we need not decide whether a foreign state ever may waive its right to remove, *see* Wright, Miller & Cooper, 14A Federal Practice & Proc. § 3729, at 486–87 (Supp.1985), we do hold that a forum selection clause that merely puts jurisdiction in either a federal or state court does not constitute an express or implied waiver of the sovereign's right to remove under § 1441(d). Accordingly, the refusal of the district court to remand the action to the state court was not error.

To summarize:

(1) The waiver of sovereign immunity contained in the Loan Agreement was incorporated by reference in the Supervisory Agreement and ran to the benefit of Proyecfin. The district court therefore had subject matter jurisdiction. We reverse the dismissal of the action for lack of subject matter jurisdiction.

(2) The forum selection clause in the Loan Agreement was incorporated by reference in the Supervisory Agreement and was not contradicted by the provision that places "domicile" in Caracas. BIV therefore agreed to be sued in New York and consented to jurisdiction here.

(3) BIV did not waive its right to remove the action to the federal court. We therefore affirm the denial of Proyecfin's motion to remand the action to the Supreme Court of the State of New York, County of New York.

Affirmed in part; reversed and remanded in part.