**MARITIME VENTURES INTERNATIONAL, INC., Plaintiff,**

v.

**CARIBBEAN TRADING & FIDELITY, LTD.; Michael Z. Matthew; Alberto de Paulo; Marvin Douglas; Kennedy Simmonds; Michael O. Powell; The Federation of St. Christopher & Nevis, a/k/a St. Kitts; First Independent Trust (Curacao) N.V.; Irvine Overseas Corporation N.V.; Alban Enterprises Corp.; Avondale Navigation Corp.; Tuborg Corporation, Caribbean Trading & Fidelity Corporation, Ltd., Defendants.**

No. 85 Civ. 6238 (WCC).

United States District Court, S.D. New York.

Sept. 29, 1989.

Nourse & Bowles, New York City, for plaintiff Maritime Ventures International, Inc.; Lawrence J. Bowles and Shaun F. Carroll, of counsel.

Sylvor, Schneer, Gold & Morelli, New York City, for defendants Caribbean Trading & Fidelity, Ltd., Michael Z. Matthew, Alberto de Paulo, First Independent Trust (Curacao) N.V. and Caribbean Trading & Fidelity Corp., Ltd.; Iris S. Richman, of counsel.

Healy & Baillie, New York City, for defendants Federation of St. Christopher & Nevis, a/k/a St. Kitts, Kennedy Simmonds and Michael O. Powell; John D. Kimball, Richard V. Singleton, II and Matthew A. Marion, of counsel.

## OPINION AND ORDER

### WILLIAM C. CONNER, District Judge:

This admiralty action arises out of a charter party between plaintiff Maritime Ventures International, Inc. ("MVI") and defendant Caribbean Trading & Fidelity, Ltd. ("CTF"), stemming from a complex international oil transaction. The other defendants are Caribbean Trading & Fidelity Corporation, Ltd., First Independent Trust (Curacao) N.V., Michael Z. Matthew, Alberto de Paulo (collectively "the CTF defendants"), Marvin Douglas, The Federation of St. Christopher & Nevis ("St. Kitts"), St. Kitts' Prime Minister Kennedy Simmonds, St. Kitts' Deputy Prime Minister Michael O. Powell, Irvine Overseas Corporation N.V., Alban Enterprises Corp., Avondale Navigation Corp., and Tuborg Corporation.

This opinion rules upon three separate motions by various defendants. First, Simmonds and Powell move for summary judgment pursuant to Fed.R.Civ.P. 56(c). Second, St. Kitts moves the Court to reconsider its prior opinion and dismiss plaintiff's claims against the government. Third, the CTF defendants move "to dismiss the fourth, fifth, seventh and eighth causes of action or to modify, vacate, amend, or rescind" its previous order that the fraud claims be tried before the Court and not arbitrated. For the reasons articulated below, the motion on behalf of Simmonds and Powell is granted, and the action against them is dismissed. St. Kitts' motion is denied. In addition, the CTF defendants' motion to dismiss is denied, but its motion to have the fraud claims heard by an arbitrator is conditionally granted.

## BACKGROUND

On December 18, 1984, St. Kitts issued a mandate authorizing CTF "to act on behalf of the Government of St. Kitts–Nevis for the purpose of arranging and concluding transactions involving the acquisition, transportation, storage, refining, distribution, financing and marketing of crude oil and products related to or derived thereform." Plaintiff's Exh. 8. The mandate further granted CTF the power "to enter into and maintain any contracts related to crude oil ... or ancillary contracts related thereto ... which, at [CTF's] discretion, it deems are in the best interests of the Government of St. Kitts–Nevis." *Id.*

After concluding a contract with the Nigerian National Petroleum Company ("the NNPC") for the purchase of crude oil, and another contract with a second party for the resale of the oil, CTF chartered the vessel "Senhorita" from MVI. No cargo of

oil, however, was ever loaded onto the Senhorita, and the ship sat idle at Bonny, Nigeria for an extended period. MVI instituted this action, seeking to enforce the arbitration clause of the charter party against the defendants on its claims for breach of contract and fraud to recover $346,915.17 in demurrage charges and lost business opportunities allegedly incurred from the Senhorita's detainment.

## DISCUSSION

### I. The Standard for Summary Judgment

A court shall grant summary judgment where "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Although in assessing whether there are any factual issues to be tried, the court must resolve ambiguities and draw reasonable inferences against the moving party, the opposing party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Insurance Company*, 804 F.2d 9, 11–12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The party opposing summary judgment must offer evidence supporting its claim, and the court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

### II. Simmonds and Powell

Plaintiff's Second Amended Complaint alleges that Simmonds and Powell were joint venturers along with the other defendants acting with expectations of personal gain. Simmonds and Powell argue that they acted solely in an official governmental capacity, that there is no admissible evidence supporting plaintiff's contrary contentions, and that the case against them must therefore be dismissed.

To prove the personal involvement of Simmonds and Powell, MVI offers the deposition testimony of Daniel Montgomery, to whom CTF had issued a power of attorney approved by St. Kitts in the mandate. MVI also supports its claim with various documents it maintains implicate Simmonds and Powell. With respect to Simmonds, defendants maintain that Montgomery's testimony is insufficient to create an issue of fact because Montgomery admitted that he had no basis for accusing Simmonds of being personally involved in the transaction. With respect to Powell, defendants maintain that Montgomery's testimony is incapable of raising a triable issue of fact because it is inadmissible hearsay based on statements made to him over the telephone by Marvin Douglas, another participant in the transaction.

Montgomery's testimony is clearly inadequate to create an issue of fact regarding Simmonds' alleged personal involvement in the transaction. Although he initially identified Simmonds as being one of the "associates" of Douglas who was to receive compensation from the crude oil transaction, he later retracted this claim during the same deposition by admitting, "I can't testify as to Simmonds. His name wasn't brought up." Singleton Aff., Exh. 4. Unsubstantiated accusations by a witness who withdraws them do not satisfy Rule 56(e)'s requirement that a party opposing summary judgment "set forth specific facts showing that there is a genuine issue for trial." Consequently, plaintiff's case is dismissed against Simmonds.

Nor does Montgomery's testimony raise a triable issue of fact about Powell's alleged personal involvement in the transaction. Montgomery's testimony relies entirely on the truth of statements made to him by Douglas over the telephone. Montgomery testified that Douglas had told him that certain "associates" of Douglas in St. Kitts were to receive compensation from the oil transaction, and that "a certain amount of money had to go to officials." Montgomery indicated that Simmonds and Powell were the "associates" mentioned by Douglas, despite having previously testified during the same deposition that Doug-

las never actually identified them. Finally, Montgomery stated that "Powell's name was brought up by Douglas as being involved in the whole transaction with Douglas. And it was my understanding that he was involved for personal gain as well as in acting as a government official." Singleton Aff., Exh. 4.

A review of the record indicates that Montgomery had no basis for asserting that Powell was personally involved in the oil transaction other than Douglas's statements. Thus, plaintiff attempts to introduce, through Montgomery, Douglas's alleged out of court statements.

■ Plaintiff argues that Montgomery's testimony is admissible against Simmonds and Powell under Rule 801(d)(2)(C), (D), or (E), Fed.R.Evid. These provisions except from the hearsay restrictions a statement by an authorized individual, an agent, or a coconspirator.

Under Rule 801(d)(2)(C), "a statement by a person authorized by the party to make a statement concerning the subject" is considered an admission by the party and not hearsay. Plaintiff here has put forth no evidence that Douglas was authorized by Powell to discuss Powell's alleged personal involvement in any transaction. Consequently, Montgomery's testimony, based on what he was allegedly told over the phone by Douglas, is inadmissible under Rule 801(d)(2)(C).

Plaintiff also contends that Montgomery's deposition testimony is admissible as a statement by an "agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship." Fed.R.Evid. 801(d)(2)(D). However, plaintiff offers no evidence that Douglas was an agent of Powell. Where plaintiff offers no evidence of an agency, and no agency can be inferred from the surrounding circumstances, an alleged agent's declarations are inadmissible. *United States v. Pacelli*, 491

F.2d 1108, 1117 (2d Cir.), *cert. denied*, 419 U.S. 826, 95 S.Ct. 43, 42 L.Ed.2d 49 (1974).[1]

■ Lastly, plaintiff claims that Montgomery's deposition testimony is admissible under Rule 801(d)(2)(E). Rule 801(d)(2)(E) provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" constitutes an admission by the party and is therefore admissible. In order for a statement to qualify under Rule 801(d)(2)(E), the Court must decide by a preponderance of the evidence that there was a conspiracy involving the declarant and the defendant, and that the statement was made "during the course of and in furtherance of the conspiracy." *Bourjaily v. United States*, 483 U.S. 171, 175–76, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987). This is a preliminary factual question concerning the admissibility of evidence left to the Court under Rule 104(a), Fed.R.Evid. *Id.* In reaching its determination, the Court may consider the contested statements themselves along with any independent evidence. *Id.* at 181, 107 S.Ct. at 2781; *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1073 (2d Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 128, 102 L.Ed.2d 101 (1985); Rule 1101(d)(1), Fed.R.Evid. (Rules of Evidence shall not apply to "[t]he determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under rule 104.").

After weighing the information before it, the Court finds no evidence of Powell's personal involvement in a joint venture or conspiracy. It is telling that MVI offers no testimony by Douglas himself, only Montgomery's second-hand account of what Douglas allegedly told him. Indeed, Montgomery's testimony does not even allege that Douglas told him that Powell was involved in a conspiracy or joint venture, but only that Powell was working with Douglas on the transaction. It would be unreasonable to infer from Douglas's statement alone that Powell was personally in-

---

1. Even if plaintiff could show that Douglas was an agent of the government of St. Kitts, he would still not be an agent of Powell, and therefore his out of court statements would be inad-

missible against Powell in his private capacity as an alleged joint venturer. *See Mahlandt v. Wild Canid Survival and Research Center, Inc.*, 588 F.2d 626, 631 (8th Cir.1978).

volved in the transaction, because it is just as likely that Powell was working with Douglas in his official government role as Deputy Prime Minister as it is that he was seeking personal gain through a joint venture. Indeed, the fact that earlier during the same deposition, Montgomery denied that Powell was involved personally calls into question the reliability of his testimony.

Apart from Montgomery's bare statement that it was his "understanding" that Powell was involved in the transaction for personal gain, plaintiff maintains that a conspiracy or joint venture involving Powell is demonstrated by "all documentary evidence in the record bearing the signature of Mr. Powell, the imprimatur of St. Kitts, and the personal telex answer-back of Mr. Powell." Plaintiffs's Brief at 3. Essentially, plaintiff introduces these documents both to demonstrate a conspiracy for the purpose of admitting Montgomery's testimony under Rule 801(d)(2)(E), and on their own to raise a triable issue of fact regarding Powell's alleged personal involvement in the transaction.

Plaintiff's "documentary evidence," with or without Montgomery's deposition testimony, fails not only to prove by a preponderance of the evidence that Powell was involved in a conspiracy or a joint venture, but even to raise a triable issue of fact regarding Powell's individual role in the oil deal. Thus, the "documentary evidence" can neither render Montgomery's deposition testimony admissible, nor overcome Powell's motion for summary judgment.

Plaintiff does not explain in any detail how the documentary evidence it offers inculpates Powell. After carefully reviewing the documents, the Court finds that in most instances no conclusions can be drawn from them, and in some instances, they actually bolster Powell's contentions. For example, correspondence bearing the imprimatur of St. Kitts, without incriminating content, suggests that Powell was conducting official business, not acting as a private individual. Furthermore, the mere fact that a document bears Powell's signature, in the absence of incriminating con-

tent, does not suggest that he had a personal stake in the transaction. Government officials sign documents in their official capacities all the time, and the Court could find no documents suggesting that Powell was acting otherwise than on behalf of the government.

Likewise, the lone telex sent to Powell's telex number is inadequate to prove by a preponderance that Powell was part of a joint venture. Numerous telexes proffered by plaintiff expressly state that telex problems inhibited the ability to reach government headquarters, suggesting the necessity of using an alternative telex machine. Furthermore, the telex pointed to by plaintiff does not contain any evidence of Powell's personal involvement. It is a message from the NNPC to the government of St. Kitts, addressed to "His Excellency" the "Deputy Prime Minister," simply mentioning "the application by your country to purchase crude oil" and requiring that "your representatives must have a full mandate to negotiate and conclude a contract and must produce a notarised power of attorney to this effect." No reasonable person could construe this telex to refer to anything other than official government business.

Finally, the "profit-division sheets" produced by Montgomery do not raise an issue of fact about Powell's personal involvement. They do not explicitly or implicitly refer to him. They simply say that St. Kitts is to receive thirty cents commission. Plaintiff argues that St. Kitts should have received only twenty-two cents per barrel, and that the extra eight cents was to be paid to Simmonds and Powell. This is an empty theory without any facts to substantiate it other than Douglas's alleged phone statements, which I have already ruled to be inadmissible hearsay. Accordingly, these profit-division sheets prepared by Montgomery, not only fail to aid the admission of his deposition testimony, but also fail to raise a triable issue of fact regarding Powell's involvement in the arrangement to purchase oil from the NNPC.

In sum, neither Montgomery's testimony nor the documents pointed to by plaintiff

establish by a preponderance of the evidence that Powell was part of a joint venture. Therefore, Montgomery's testimony cannot be admitted under Rule 801(d)(2)(E). As inadmissible hearsay under Rule 802, Fed.R.Evid. it contravenes the evidentiary requirements for summary judgment motions established by Rule 56(e), Fed.R. Civ.P., which requires that testimony "be made on personal knowledge" and "shall set forth such facts as would be admissible in evidence...."[2] *See Schwimmer v. Sony Corp. of America*, 637 F.2d 41, 45 n. 9 (2d Cir.1980) ("A hearsay affidavit is a nullity on a motion for summary judgment."); *First City Federal Sav. Bank v. Bhogaonker*, 684 F.Supp. 793, 798 (S.D.N. Y.1988) ("[A] litigant opposing summary judgment must give some affirmative indication that his version of the facts is not fanciful; a party may not rely on hearsay."); *Seltel, Inc. v. North Florida 47, Inc.*, 683 F.Supp. 337, 340 (S.D.N.Y.1987) (defendant's affidavit unable to satisfy the requirements of Rule 56(e) because based on hearsay).

Without testimony or documents supporting its claims against Powell, plaintiff is left without the specific facts required by Rule 56 to sustain its case against Powell. "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Plaintiff's case is dismissed against Powell.

### III. St. Kitts

■ In an earlier opinion, *Maritime Ventures International, Inc. v. Caribbean Trading & Fidelity, Ltd.*, 689 F.Supp. 1340 (S.D.N.Y.1988), I held that the Court had subject matter jurisdiction to consider whether St. Kitts could be brought to arbitration in New York pursuant to the arbitration clause contained in the charter party executed by CTF with MVI. I found that St. Kitts could be brought into federal court in New York because it had impliedly waived its sovereign immunity under the Foreign Sovereign Immunities Act of 1976, ("the Act"), 28 U.S.C. §§ 1330, 1605 (1982).

In reaching this decision, I was guided by the legislative history of the Act and dictum from the court of appeals saying that sovereign immunity is impliedly waived where the foreign state "has agreed to arbitration in another country or where a foreign state has agreed that the law of another country should govern a contract." H.R.Rep. No. 1487, 94th Cong., 2d Sess. 18, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6617; *Proyecfin de Venezuela v. Banco Industrial*, 760 F.2d 390, 393 n. 2 (2d Cir.1985).[3] Applying the well-pleaded complaint rule, and assuming the truth of plaintiff's allegations, as required in a subject-matter jurisdiction inquiry, I held that for the purpose of establishing this Court's jurisdiction, St. Kitts, as an undisclosed principal, was bound by the arbitration clause contained in the charter party executed by its agent, CTF.

At a conference on July 8, 1988, I allowed St. Kitts to move the Court to reconsider its holding with respect to the sovereign immunity issue. Upon reviewing its prior holding and carefully considering St. Kitts' arguments, the Court now declines to alter its previous decision.

The gravamen of St. Kitts' current motion is that the Act only contemplates an implied waiver by the government itself, or by a sovereign agent cloaked in the government immunity conferred by the statute. According to St. Kitts, a private agent, even when acting as an agent for a foreign government under a broad mandate, may not waive the government's immunity absent the government's express consent. *Nadler v. Baybank Merrimack Valley*, 733 F.2d 182, 184 (1st Cir.1984).

---

2. Although Rule 56(e) expressly refers to affidavits, both the language of the Rule and the caselaw construing it demonstrate that it applies to deposition testimony as well. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 n. 19, 90 S.Ct. 1598, 1609 n. 19, 26 L.Ed.2d 142 (1970);

3. Congress subsequently codified this rule. 28 U.S.C. § 1605(a)(6).

Because CTF was not a sovereign agent, and the mandate does not contain an express authorization for CTF to take any action that would waive St. Kitts' immunity, St. Kitts argues, CTF was prohibited by the Act from binding St. Kitts to arbitration, and St. Kitts cannot be bound by the arbitration clause in the charter party.

St. Kitts marshals no case law or legislative history supporting its position, absent its own observation that none of the cases allowing implied waivers involve private agents, and dictum that, "... the implicit waiver clause of § 1605(a)(1) is narrowly construed...." *Frolova. v. Union of Soviet Socialist Republics,* 761 F.2d 370, 377 (7th Cir.1985). Indeed, the Second Circuit has taken the opposite view, noting "the broad reading of implicit waivers" under § 1605. *Proyecfin de Venezuela v. Banco Industrial,* 760 F.2d 390, 393 n. 2 (2d Cir. 1985).

St. Kitts maintains that the Act's waiver provision applies only to sovereign governments and their instrumentalities, and that a private agent is not an instrumentality under section 1603(b) of the Act. St. Kitts reasons that since only sovereign agents receive the same immunity as the government under the Act, only sovereign agents may waive the government's immunity under the Act. St. Kitts asserts that a government can only be considered to have executed a knowing waiver if a sovereign agent executes the waiver.

St. Kitts' argument is unpersuasive. Although it is clear that under § 1603 of the Act, only a foreign state or an "agency or instrumentality ... which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state," is entitled to *invoke* sovereign immunity, it does not follow that only a sovereign agent can *waive* a foreign state's immunity. Section 1603 merely defines the term "agency or instrumentality of a foreign state" for the purpose of invoking sovereign immunity. That definition is inapplicable to the waiver provision of § 1605, because § 1605 does not employ the term in question. Thus, St. Kitts' reliance on § 1603 to invalidate CTF's waiver is misplaced.

Moreover, although the Act and its legislative history are both silent on the issue of whether a private agent may waive the government's immunity, it is apparent that Congress, in drafting the statute, intended to restrict corporations and individuals more stringently from invoking the protective veil of sovereign immunity than it did to limit their ability to waive immunity on behalf of the government for whom they served as a private agent. This is a logical construction of the statute because, while it would be inequitable for private entities to claim the same protection as foreign governments and avoid jurisdiction in American courts, there is nothing unfair about honoring a waiver executed by an authorized agent of the government. Indeed, agency law dictates that actions by an agent within the scope of his agency are binding on an undisclosed principal. *See Kirno Hill Corp. v. Holt,* 618 F.2d 982, 985 (2d Cir.1980).

St. Kitts' final argument is that even if the Court holds that a private agent may waive a foreign state's sovereign immunity, the agency relationship in this case is too attenuated to allow such a result. This is a contention on the merits which may be pursued at the trial to determine whether St. Kitts is bound by the arbitration clause in the charter party. For the purpose of this jurisdictional motion, however, the Court must accept plaintiff's contention that CTF served as St. Kitts' agent, and acted within the scope of its authority under the mandate and the powers of attorney contained in the mandate. *See Gibson v. Firestone,* 741 F.2d 1268, 1270 (11th Cir.1984), *cert. denied,* 469 U.S. 1229, 105 S.Ct. 1230, 84 L.Ed.2d 367 (1985) (citing *Goosby v. Osser,* 409 U.S. 512, 521 n. 7, 93 S.Ct. 854, 860 n. 7, 35 L.Ed.2d 36 (1973)). Consequently, the Court finds that CTF's actions subject St. Kitts to the jurisdiction of this Court.

## IV. The CTF Defendants

■ In its previous decision, the Court ordered a trial "pursuant to § 4 of the

Arbitration Act, 9 U.S.C. § 4, to determine which parties are bound by the arbitration agreement of the charter party, and also to try the claim of fraud." Now, the CTF defendants, while still contesting the arbitration clause's applicability to them, at the same time argue that should they be bound to arbitrate, plaintiff's fraud claims against them must be heard by the arbitrator and not by this Court. MVI asserts that in order for the Court to determine whether to bind Matthew and de Paulo to the arbitration clause executed on behalf of CTF in the charter party, as it is required to do by § 4, the Court must necessarily resolve the fraud claims against them.

Generally, a district court should compel arbitration unless it is clear that the arbitration clause is too narrow to encompass the dispute. *Chevron U.S.A., Inc. v. Consolidated Edison Co.*, 872 F.2d 534, 537 (2d Cir.1989). Moreover, fraud claims, whether based on statutory or common law, are arbitrable as a matter of law. *Shearson/American Express Inc., v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 854 (2d Cir.1987).

Normally, where the parties are clearly identifiable, the only issue left facing the court is whether the arbitration clause is written broadly enough to cover plaintiff's fraud claims.[4] *Genesco*, 815 F.2d at 854. Here, however, we have the complication that the defendants are not clearly identifiable; several of them claim that they acted merely as officers or agents of CTF and are therefore not personally responsible and are not bound by the arbitration clause. This presents a problem because one of plaintiff's theories for holding defendants to the arbitration clause is that they used CTF to perpetrate a fraud and are

therefore not entitled to the protection of the corporate form.

Thus, plaintiff contends that the Court must decide the fraud issue as a threshold matter in determining whether to pierce the corporate veil and make defendants susceptible to arbitration, while defendants contend that the fraud issue is a substantive aspect of the case which must be decided by the arbitrator under the broad terms of the arbitration clause. Both sides are correct. Should it be necessary for the Court to decide the fraud issue in order to determine whether defendants are bound by the arbitration clause, the Court will do so, but only for that purpose, and not for the purpose of deciding liability. Liability, under the broad terms of the arbitration clause, is to be decided by the arbitrator.

Plaintiff makes several other arguments for piercing the corporate veil and subjecting defendants to the arbitration clause which do not involve fraud. For example, in its previous opinion, the Court denied a motion on behalf of Matthew and de Paulo for summary judgment because it found that plaintiff had raised significant issues of fact concerning the question of whether Matthew and de Paulo disregarded CTF's corporate form and used the corporation as a vehicle for transacting their personal business. In addition, apart from its corporate veil theory, plaintiff alleges that defendants were involved in a joint venture with CTF. Thus, the Court could conceivably find that the CTF defendants are bound by the arbitration clause without deciding the fraud issue.

In sum, I find that, if necessary, the Court may decide whether defendants committed fraud for the purpose of determining whether to disregard CTF's corporate form and bind the other defendants to the charter party's arbitration clause, but that

---

**4.** Although defendants have not challenged the applicability of the arbitration clause on the ground that it is framed too narrowly, any such argument would certainly fail. It is clear that its language is broad enough to require submission of plaintiff's fraud claims to an arbitrator. The charter party's arbitration clause requires that "[a]ny and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New

York...." Plaintiff's Exh. 25. This language is nearly identical to the language in the arbitration clause at issue in *Genesco*, where the parties required arbitration of "all claims and disputes of whatever nature arising under this contract." *Genesco*, 815 F.2d at 854. In that case, the court of appeals held, "we conclude that the arbitration clause is sufficiently broad to encompass [plaintiff's] fraud claims against [defendant]." *Id.*

plaintiff's fraud claims, along with the other substantive claims of its case on the merits, must be resolved by arbitration for the purpose of determining liability.

## CONCLUSION

For the foregoing reasons, the Court grants summary judgment and dismisses the action against defendants Simmonds and Powell. The Court denies St. Kitts' motion to reconsider its earlier ruling. The CTF defendants' motion to dismiss is also denied.