**PEDRO PABLO BLANCO F. and Jesus A. Vasquez Mancera, as Trustees for Proyecfin De Venezuela, S.A. and Inversiones Eufrates, S.A. and Inversiones Gusanco, C.A., Plaintiffs–Intervenors,**

v.

**BANCO INDUSTRIAL DE VENEZUELA, S.A., Defendant.**

**No. 84 Civ. 5352 (VLB).**

United States District Court, S.D. New York.

April 2, 1992.

Memorandum Order on Reargument April 30, 1992.

---

Stuart Potter, Butler, Fitzgerald & Potter, New York City.

White & Case, New York City, for Banco Industrial De Venezuela.

Sidney B. Silverman, Silverman, Harnes, Obstfeld & Harnes, New York City, for Proyecfin De Venezuela.

## MEMORANDUM AND ORDER

VINCENT L. BRODERICK, District Judge.

## PRIOR PROCEEDINGS AND BACKGROUND

This litigation involves a large construction project in Venezuela conducted by a Venezuelan corporation, Proyecfin de Venezuela, S.A. ("the corporation") and financed in part by a Venezuelan bank, Banco Industrial de Venezuela ("the bank") with offices in New York City under a loan agreement providing for the bank to supervise aspects of the project. On July 3, 1984, this lawsuit was commenced by the corporation against the bank in New York state court alleging failure to fulfill the bank's obligations under agreements with the corporation. The suit was removed to this court and on November 14, 1984, I dismissed the action for lack of subject matter jurisdiction.

The Court of Appeals reversed this dismissal on April 4, 1985, holding that the court possessed jurisdiction under 28 U.S.C. § 1605(a)(1) because the foreign governmental entities involved had waived sovereign immunity by means of a clause in the loan agreement. *Proyecfin de Venezuela, S.A. v. Banco Industrial de Venezuela, S.A.*, 760 F.2d 390 (2d Cir.1985). The loan agreement explicitly provided that sovereign or other immunity was waived, but it did not make New York the sole or exclusive situs for litigation, nor did it contain waivers other than with respect to immunity. The Court of Appeals rejected the argument that United States courts would become "international courts of claims," noting the continued potential applicability of the doctrine of *forum non conveniens:*

"We are not concerned that United States courts will become the courts of choice for local disputes between foreign plaintiffs and foreign sovereign defendants and thus be reduced to 'international courts of claims'.... The traditional doctrine of forum non conveniens ... is still applicable in cases arising under the Foreign Sovereign Immunities Act.... Appellee, of course, may raise that issue in the district court on remand from this Court." *Id.* at 394.

In 1986, based on the circumstances then existing and the state of the law at that time, this court denied defendant's motion

to dismiss on *forum non conveniens* grounds.

## CURRENT CIRCUMSTANCES OF THE CASE

On November 14, 1986 an order of liquidation of the plaintiff corporation was entered by a Venezuelan bankruptcy court. The trustees for the corporation have moved to dismiss the action or to stay it until the Venezuelan bankruptcy proceeding is finally determined.

Meanwhile, I permitted parties claiming to be shareholders in the plaintiff corporation to intervene; they filed pleadings seeking relief on behalf of the corporation and individually. The defendant bank and the trustees for the plaintiff corporation have moved to dismiss the intervenors' complaint.

The principal issues presently in dispute concern whether shareholder derivative actions, or direct shareholder suits against third parties or trustees, are permissible in this case. Determination of those issues would involve factual inquiry into the actual workings of public or quasi-public sector entities in Venezuela with particular charter provisions and history, as well as into Venezuelan or other applicable corporate law in the abstract. Material factual issues—which may or may not turn out to be in genuine dispute if tested upon summary judgment—would have to be determined to dispose of the intervenors' complaint on the merits. Thus, it would appear that the motion to dismiss the intervenors' complaint on its face for failure to state a claim, or to strike portions of the intervenor complaint, should appropriately be denied. For the reasons which follow, however, these matters need not be addressed.

■ Where the principal entity, the affairs of which are the focus of the action, is undergoing liquidation by a foreign court, and where virtually all of the facts in dispute occurred in the foreign country conducting the liquidation and involve nationals of that country, it is no longer appropriate to retain this litigation in the United States. My decision in 1986 declining to dismiss on *forum non conveniens* grounds

was rendered under entirely different circumstances and is not binding or persuasive in the current posture of the case.

Were plaintiff corporation's bankruptcy case being handled in the United States, an automatic stay of this litigation would be applicable under 11 U.S.C. § 362(a); litigation elsewhere can also be enjoined under 11 U.S.C. § 105(a).

Where a supervised entity such as an insurer is in liquidation in the United States, procedures are generally followed which respect the primary role of the liquidating entity in supervising the liquidation, in part to avoid favoring some claimants over others because of vicissitudes of differing forums in which the claimants are pursuing their claims. See N.Y. Insurance Law art. 74; *Alliance of American Insurers v. Cuomo*, 854 F.2d 591 (2d Cir.1988); *Corcoran v. Ardra Ins. Co.*, 842 F.2d 31 (2d Cir.1988); *Law Enforcement Ins. Co. v. Corcoran*, 807 F.2d 38 (2d Cir.1986); *Levy v. Lewis*, 635 F.2d 960 (2d Cir.1980); *G.C. Murphy Co. v. Reserve Insurance Co.*, 54 N.Y.2d 69, 444 N.Y.S.2d 592, 429 N.E.2d 111 (1981); *Lac D'Amiane Du Quebec v. American Home Ins. Co.*, 864 F.2d 1033 (3d Cir.1988).

This lawsuit involves almost exclusively the conduct and workings of a Venezuelan public corporation and its relationship with other Venezuelan nationals and public sector entities. The lawsuit can no longer be conveniently handled in the United States without running the risk of prejudicing the orderly processing of the Venezuelan bankruptcy proceeding.

Dismissal rather than stay of the proceedings has numerous advantages to the parties and to the administration of justice. Litigation, ongoing or contemplated, in two different countries involving the same subject matter is certain to involve difficulties of coordination, and it will entail additional expense for parties and witnesses forced to deal with two jurisdictions. It will present, to the courts of either or both countries, serious questions concerning the appropriate deference which is owed to the courts of the other. All of this is contrary to the

objectives set forth in Rule 1 of the Federal Rules of Civil Procedure.

Since Venezuelan litigation is already in progress involving the core treatment of the bankrupt corporation, convenience favors Venezuelan adjudication of all related claims. The Supreme Court has specifically recognized this consideration as relevant (although not by itself controlling) in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 184, 99 S.Ct. 2710, 2717, 61 L.Ed.2d 464 (1979), referring to the "desirability of consolidating similar claims in a single proceeding...." Here, as in *Great Western*, id. at 185, 99 S.Ct. at 2717, "... the claim involved has only one obvious locus...." Since the corporation is in bankruptcy in Venezuela, that locus must be Venezuela.

It has also become increasingly evident, especially since the plaintiff intervenors have raised issues of internal corporate affairs, that in the case at bar only a Venezuelan court can properly evaluate the nuances of factual patterns against background knowledge of local practice. An analogy suggests itself: within the United States the so-called "internal affairs doctrine" favors placement of internal corporate litigation in the state of incorporation, and district courts familiar with the law of the state of incorporation are deemed best qualified initially to interpret such law. See *Leroy v. Great Western United Corp.*, 443 U.S. 173, 186, 99 S.Ct. 2710, 2718, 61 L.Ed.2d 464 (1979):

> "... The merits of [the] claims may well depend on a proper interpretation of the State's statute, and federal judges sitting in Idaho are better qualified to construe Idaho law, and to assess the character of Idaho's probable enforcement of that law, than are judges sitting elsewhere."

The provision of the loan agreement on which jurisdiction in New York has been based does not suggest the contrary. It merely waives sovereign or other immunity: it does not affirmatively or exclusively select New York as the only proper, or preferred forum. To the contrary, the silence of this carefully worded document on this point indicates that the parties intended otherwise applicable rules to control except in regard to claims of immunity. The intent of the parties, both sophisticated entities, should be respected in that regard. See generally *Stewart Organization v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (forum selection clause one factor but not by itself determinative in regard to transfer motions, and by analogy, in regard to *forum non conveniens* motions as well); *Carnival Cruise Lines v. Shute*, —— U.S. ——, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (reasonable forum selection clauses should be followed); *Northwestern National Insurance Co. v. Donovan*, 916 F.2d 372 (7th Cir.1990) (stressing facts showing equality of probable legal knowledgeability of the parties).

Based on circumstances not in existence when the prior motion was denied, this action is dismissed on grounds of *forum non conveniens*.

SO ORDERED.

### MEMORANDUM ORDER ON REARGUMENT

This case was dismissed on *forum non conveniens* grounds on April 2, 1992 at the behest of both the original plaintiff and the original defendant, because the plaintiff was the subject of Venezuelan bankruptcy proceedings. Intervenors seek reargument of that decision on the ground that developments in the bankruptcy proceeding indicate that the original plaintiff is not in bankruptcy:

> "... [U]ntil a new decision is adopted, it can be considered legally speaking, that PROYECFIN DE VENEZUELA S.A., as well as its affiliated companies are not in bankruptcy because it must proceed to correct the violations of form that have taken place in the process."

Translation of letter from Venezuela to Intervenors' representative dated October 2, 1991 and forwarded with cover letter to Intervenors' counsel on October 16, 1991, and attached as Exhibit 3 to the Intervenors motion for reargument dated April 21, 1992.

Intervenors ask that their motion for reargument be entertained despite other-

wise tardy submission because of delays in forwarding of mail sent to Intervenors' law firm which had relocated.

Intervenors' motion for reargument is granted. Upon reconsideration, the decision dismissing this case on *forum non conveniens* grounds is adhered to, for the reasons given in the April 2, 1992 memorandum order as well as the additional reasons discussed here.

Where the principal entity, the affairs of which are the focus of the action, is undergoing liquidation in a foreign court, and where virtually all of the facts in dispute occurred in the foreign country conducting the liquidation and involve nationals of that country, it is no longer appropriate to retain this litigation in the United States. This is so whether or not it is necessary "to correct ... violations of form" involved in the proceedings.

It would be inappropriate to retain this litigation in New York solely on the basis of violations of form in the Venezuelan bankruptcy proceeding which are apparently in the course of being corrected and which Intervenors do not even assert do or even may involve matters of substance which would abort the bankruptcy proceedings.

Moreover, Intervenors have waived and are estopped from asserting the Venezuelan *cassation* decision of August 14, 1991 on the Appeal as to Form, sent in translated form to Intervenors' counsel on October 16, 1991 and not called to the attention of the court until more than five months later subsequent to the April 2, 1992 ruling dismissing this litigation on *forum non conveniens* grounds, despite motions to dismiss the Intervenors' claims having been filed, heavily based on Venezuelan bankruptcy proceedings on December 5, 1989.

A further separate reason for dismissal of this litigation at the present time is that both the original plaintiff and the original defendant filed motions to dismiss the litigation—a result opposed only by the subsequent intervenors.[1] Intervenors are not parties to the loan agreement on which personal jurisdiction in New York was originally based as discussed above, and their claims could not be sued upon pursuant to that basis of jurisdiction if standing alone.

■ Retention of pendent claims once the original ones are dismissed is discretionary. To exercise that discretion to retain matters involving almost exclusively events in Venezuela governed by Venezuelan law would run contrary to the policy established by Congress in enacting 28 U.S.C. § 1367 in 1990 which, although not retroactive, is persuasive. See Stone, "The Common Law in the United States," 50 Harv.L.Rev. 4, 12–18 (1936). Under that statute—which is in this respect declaratory of preexisting discretion:

"The district courts may decline to exercise supplemental [previously 'pendent'] jurisdiction ... if—

(1) the claim raises a novel or complex issue of State law;

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

All of these factors favor declination of exercise of jurisdiction over the pendent Intervenor claims:

(1) Intervenors' claims—as illustrated by the issues presented by the motions con-

---

1. Intervenors have not sought to question the rights of the trustees for Proyecfin to move to dismiss the litigation because of the *cassation* ruling in the Venezuelan bankruptcy finding violations of form which must be corrected (Exhibit 3 to Intervenors Motion for Reargument). I therefore treat them as having abandoned any such contention.

Moreover, it has not been suggested by any party that a procedural barrier to a Venezuelan bankruptcy proceeding which must be corrected has the somewhat unworkable and counterintuitive effect of wiping out *nunc pro tunc* steps taken by trustees prior to that ruling, such as the making of the motions here to dismiss the Intervenors' claims and this litigation.

In any event, any such claim should have been made promptly after October 16, 1991.

cerning whether derivative suits are permissible as to Venezuelan public sector corporations—involve Venezuelan law, which is at least as strong a reason for the case to be held in a Venezuelan tribunal as predominance of State law would be for adjudication by state courts.

(2) Intervenors' claims predominate not only substantially but completely over the initial ones, now that both plaintiff and defendant have filed motions to dismiss the litigation in this court.

(3) The district court has been asked by motions of both the original plaintiff and the original defendant to dismiss all claims over which it had original jurisdiction.

(4) The pendency of foreign bankruptcy proceedings, notwithstanding *cassation* formal violations which must be corrected (Exhibit 3 to Intervenors' Motion for Reargument, *supra*) make it counterproductive for all concerned to continue this litigation in this court.

To the extent Intervenors may claim to represent the original plaintiff by acting in a derivative capacity seeking to represent all shareholders—an issue still pending on technical grounds which are not reached because of dismissal for *forum non conveniens*—class action treatment or its equivalent through the mechanism of a derivative action must be appropriate. Here, aside from the formal Venezuelan bankruptcy, it is not contested that an insolvency problem confronts Proyecfin, so that in substance this court would become the forum for litigation analogous to a bankruptcy proceeding, in which success of a claim against A may not only adversely affect B who is compelled to satisfy it, but also C, another claimant against B. Because of complications presented in such situations, the United States Bankruptcy Rules wisely make the use of class action devices in such proceedings discretionary. See *In re Thomson McKinnon Securities, Inc.*, 133 B.R. 39 (S.D.N.Y.1991), *aff'd by this court by memorandum and order*, 141 B.R. 31 (S.D.N.Y.1992). Discretion is exercised against undertaking such a proceeding in a distant location involving issues dominated by foreign law.

Intervenors contend that the court's allowance of the intervention notwithstanding concern about the bankruptcy proceeding in Venezuela is persuasive or conclusive that the court should retain the litigation at this stage. At that time, the court did not confront a situation in which both the original plaintiff and original defendant had filed motions to dismiss the entire litigation, which only the Intervenors wished to continue in this court.

The extent to which Venezuelan law predominates as to every aspect of this litigation had, at the time intervention was permitted, not been made as evident as it now is—especially as a result of Intervenors seeking to raise derivative claims on behalf of a public sector corporation created by a foreign government. Nor was there then clear development of the impact of the Venezuelan bankruptcy on the litigation with the strong indication drawn therefrom that this case should be terminated in its entirety.

Allowing intervention permitted Intervenors to make such arguments or claims as they chose at the threshold—including their arguments discussed in this memorandum order. This did not, nor could it, foreclose *forum non conveniens* dismissal later if called for by all of the circumstances.

Intervenors further point out that forum selection clauses freely agreed upon by sophisticated parties should not be set aside without a strong showing. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972). In so indicating, Intervenors choose to ignore entirely the fact, specifically discussed in the memorandum order of April 2, 1992, that the loan agreement provisions on which jurisdiction in this litigation is predicated (see *Proyecfin De Venezuela v. Banco Industrial de Venezuela, S.A.*, 760 F.2d 390, 393 [2d Cir.1985]) merely waive sovereign or other immunity and do not affirmatively require or call for relevant litigation to be conducted in New York rather than elsewhere. The intent of the parties is thus that factors other than sovereign or other immunity should control, which com-

pels rather than militates against, application of *forum non conveniens* where otherwise called for. See 760 F.2d at 394.

 Intervenors quote newspaper sources and concerns earlier expressed by this court relating to the administration of justice in Venezuela. Such concerns, while to some extent properly considered by courts of the United States, must be balanced against the reality that it is impracticable for this country to assess or to compensate for shortcomings in other legal systems. Where one does business in a given country, one must take the legal system of that country as it is, subject to the limitation that United States courts will not enforce wrongful confiscatory acts of foreign governments, their judgments entered without jurisdiction, or their abuse of the legal process. These concerns cannot apply here where Intervenors wish to correct alleged abuses occurring abroad and no enforcement of foreign rulings is involved.

Jurisdiction in this litigation was initially based on the Foreign Sovereign Immunities Act related to suits against foreign states or their instrumentalities, combined with the waiver of immunity contained in the loan agreement, applicable under 28 U.S.C. §§ 1330(a) and 1605(a). *Proyecfin De Venezuela v. Banco Industrial de Venezuela,* 760 F.2d at 393. The Intervenors' claims enjoy no such base. These claims are not brought to enforce the loan agreement discussed above and quoted in 760 F.2d at 393, nor by parties to it. They are thus literally as well as technically pendent claims; they lost any plausible connection with the United States once both parties to the underlying dispute moved to end the litigation.

Finally, Intervenors claim surprise and lack of opportunity to argue or brief the *forum non conveniens* issue. This is itself somewhat surprising given plaintiffs' motion to dismiss or stay based on the Venezuelan bankruptcy proceeding, discussed above. Moreover, if such surprise existed, it exists no longer. Intervenors in their motion for reargument which I have granted, have had the opportunity to submit any relevant further material and argu-

ment (including legal analysis and citations contained in the motion). I have considered those further submissions, including facts known to Intervenors in 1991 but withheld from this court until after April 2, 1992.

I find the original decisions to dismiss to be sound and correct for the reasons then stated and also for the additional ones set forth in this memorandum order.

SO ORDERED.

