Evelio Boscan VILLALOBOS, Plaintiff,

v.

LOFFLAND BROTHERS COMPANY, Loffland Brothers De Venezuela, C.A., Loffland Brothers De Venezuela of Texas and Mid-Continent Supply Company, Defendants.

No. 78 Civ. 4832(PNL).

United States District Court,
S. D. New York.

Feb. 17, 1981.

David Jaroslawicz, New York City, Adler, Barish, Daniels, Levin & Creskoff, Philadelphia, Pa., for plaintiff.

Bigham, Englar, Jones & Houston, John E. Cone, Jr., New York City, for defendants.

## OPINION AND ORDER

LEVAL, District Judge.

Plaintiff Evelio Boscan Villalobos brought this action under the Jones Act, 46 U.S.C. § 688 et seq., and the general maritime law against three inter-related corporations: Loffland Brothers Company ("LBC"), a Texas corporation; Loffland Brothers de Venezuela, C.A. ("Loffland Venezuela"), a Venezuelan corporation; and Loffland Brothers de Venezuela of Texas ("Loffland Texas"), another Texas corporation.

Defendants have moved to dismiss, contending (1) lack of personal jurisdiction based on invalid service; (2) lack of subject matter jurisdiction, or, alternatively, that the action should be dismissed under the doctrine of *forum non conveniens*; and (3) that the plaintiff's claim under general maritime law is time-barred. Defendants have also moved for summary judgment in favor of LBC and Loffland Texas on the ground that they did not own, operate, manage or control the vessel named in the complaint or employ the plaintiff.

I find that this Court has jurisdiction to determine whether plaintiff asserts a claim cognizable under the Jones Act, *Lauritzen v. Larsen*, 345 U.S. 571, 575, 73 S.Ct. 921, 924, 97 L.Ed. 1254 (1953), and must examine the record to determine whether there is the substantiality of contacts between the transaction involved in the case and the United States that is required to invoke the jurisdiction of this Court under the Jones Act. *Lauritzen*, 345 U.S. at 582–91, 73 S.Ct. at 928–33; *Moncada v. Lemuria Shipping Corp.*, 491 F.2d 470 (2 Cir.), *cert. denied*, 417 U.S. 947, 94 S.Ct. 3072, 41 L.Ed.2d 667 (1974).

Plaintiff is a citizen and resident of Venezuela, and seeks recovery for injuries allegedly suffered while employed on a barge owned by Loffland Venezuela and operated on the waters of Lake Maracaibo, an internal lake in Venezuela. The barge was registered in Venezuela as required by Venezuelan Navigation Law, and was of Venezuelan nationality. It was permanently anchored within Venezuela, and could not legally be operated outside of Lake Maracaibo.

Plaintiff contends that Loffland Venezuela is wholly owned, through Loffland Texas, by LBC, thereby establishing substantial contacts with the United States and subjecting the defendants to jurisdiction in this court under the Jones Act. Voluminous material has been submitted on the question of LBC's control of Loffland Venezuela, including evidence on stock ownership, compensation and function of various key employees, structure of financial transactions, and the decision-making processes of the various companies.

I find that the American contacts argued to be shown here do not make this Venezuelan lake barge subject to the Jones Act. Even if the truth of plaintiff's allegations concerning LBC's control of Loffland Venezuela is conceded, consideration of the other factors mandates the conclusion that plaintiff has not demonstrated sufficient connection between this transaction and the United States to invoke the jurisdiction of the Jones Act.

Although by its literal language the Jones Act could apply to any seaman injured on any vessel anywhere in the world, the Supreme Court has held that the statute's reach is limited to those cases in which the United States has a sufficient interest to justify its application of American law. In *Lauritzen*, 345 U.S. at 582–91, 73 S.Ct. at 928–33, the Supreme Court enumerated seven factors that should be considered when deciding whether the Jones Act applies: the place of the wrongful act; the law of the flag; the allegiance or domicile of the injured party; the allegiance of the defendant shipowner; the place of contract; the inaccessibility of a foreign forum; and the law of the forum.

In *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 309, 90 S.Ct. 1731, 1734, 26 L.Ed.2d 252 (1970), the Supreme Court added an

additional factor, the shipowner's "base of operations," and re-emphasized that the test was not mechanical, but required a court to carefully review and weigh each factor. The Court found the vessel in *Rhoditis* was earning its entire income from cargo originating or terminating in the United States, was engaged in regularly scheduled runs between the United States and the Middle East, and that the Greek corporation owning the ship was managed and operated by a United States resident. These contacts were found to be substantial and continuing, and sufficient to invoke Jones Act jurisdiction.

■ An examination of the facts in this case, even if viewed most favorably to plaintiff, indicates that the Jones Act should not apply. The alleged injury occurred in Venezuela. The barge was registered in Venezuela and bore the Venezuelan flag. The vessel, furthermore, was a land-locked fresh water lake barge which operated entirely within Venezuela. The employment contract was made in Venezuela; the injured party was and remains a Venezuelan national and resident. Plaintiff has an accessible forum in his home country. Loffland Venezuela is a financially solvent corporation, and, although plaintiff claims it was undercapitalized at its incorporation, it has been operating for over 20 years and has liquid assets in excess of $13,000,000. *See Osvaldo E. Rodriguez Fereira v. Loffland Brothers Company*, No. 79–91 (E.D.La. Dec. 31, 1980), slip op. at 8. There is no evidence that Loffland Venezuela would be unable to pay any judgment plaintiff might receive under Venezuela law. Furthermore, while in cases involving ocean-going vessels the Supreme Court has indeed held that the place of injury and the place of contract may be fortuitous,[1] in this case, the barge never left Venezuela. The contract, the work and the injury would necessarily have been in Venezuela. The places of contract and of injury are not fortuitous but inevitable due to the local nature of the ship's operation.

Of all the factors, only the indirect U. S. ownership favors the plaintiff.

■ It is true, as plaintiff asserts, that the Jones Act has been applied when the flag of the ship was foreign. Such cases often have involved an attempt by a United States corporation to evade U. S. law by incorporating an international vessel in a foreign country and registering under a foreign flag. *E. g., Bartholomew v. Universe Tankships, Inc.*, 263 F.2d 437, 442 (2 Cir.), *cert. denied*, 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959); *Southern Cross Steamship Co. v. Firipis*, 285 F.2d 651, 653–54 (4 Cir. 1960), *cert. denied*, 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859 (1961). There has been no showing that Loffland Venezuela was formed by LBC with such intent, *see Fereira*, slip op. at 10. It cannot be said that Venezuelan registration of a barge operated solely within Venezuela is indicative of an attempt to evade United States law by use of a flag of convenience.

Plaintiff cites cases that found Jones Act jurisdiction in circumstances where the United States connection was quite attenuated. It is true that there has been some very broad language in previous decisions suggesting that American ownership of a vessel might be sufficient to invoke the application of the Jones Act. *See, e. g., Antypas v. Cia. Maritima San Basilio, S.A.*, 541 F.2d 307 (2 Cir. 1976), *cert. denied*, 429 U.S. 1098, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977); *Moncada v. Lemuria Shipping Corp.*, 491 F.2d 470 (2 Cir.), *cert. denied*, 417 U.S. 947, 94 S.Ct. 3072, 41 L.Ed.2d 667 (1974). However, in each of these cases, the court relied not on U. S. ownership alone but also on the existence of other contacts between the vessel and the United States. Again, the cases cited by plaintiff involved ocean-going vessels operating in international traffic and regularly calling at U. S. ports.[2] None of them pertains to the in-

---

1. "A seaman takes his employment, like his fun, where he finds it; a ship takes on crew in any port where it needs them" *Lauritzen*, 345 U.S. at 588, 73 S.Ct. at 931.

2. One case cited by plaintiff, *Rode v. Sedco, Inc.*, 394 F.Supp. 206 (E.D.Tex.1975), appears to involve a vessel engaged in drilling off the coast of Scotland. However, the vessel was in

stant circumstances of a barge confined to an internal fresh water lake of a foreign country.

Plaintiff also cites a line of cases to support his claim that a stationary drilling rig should not be treated differently from an ocean-going vessel. *See, e. g., Senko v. La Crosse Dredging Corp.*, 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957); *Texas Company v. Gianfala*, 222 F.2d 382 (5 Cir.), *rev'd*, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775 (1955). These cases are inapposite. They stand for the proposition that the issue of whether the plaintiff is a "member of the crew of any vessel," and hence covered by the Jones Act, is generally a question of fact for the jury. They involve the plaintiff's standing to sue, and not the issue, presented here, of the substantiality of contacts between the transaction and the United States. For the Court to close its eyes to the identity and function of the defendant's barge would be to ignore a factor crucial to the determination of that substantiality of contacts.

■ I find that plaintiff has not established sufficient substantiality of contacts with the U. S. and that the claim does not come within the coverage of the Jones Act. The same test of substantiality of contacts also governs plaintiff's claims under general maritime law, *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 381–84, 79 S.Ct. 468, 485–87, 3 L.Ed.2d 368 (1959); *Chirinos de Alvarez v. Creole Petroleum Corp.*, 613 F.2d 1240 (3 Cir. 1980). I reach the same conclusion as to the inapplicability of the general U. S. maritime law. Plaintiff's claims under general maritime law are therefore dismissed under the doctrine of *forum non conveniens.* Venezuela remains the proper forum for litigation of these claims.

ocean waters, the plaintiff was a U. S. resident and about to become a naturalized citizen, substantial control of the vessel emanated from the U. S. and the employment contract was partially executed in the U. S. The Court never addressed itself to the question of the vessel's location, and the opinion does not reveal whether this drilling rig traveled about or remained stationary.