997 F.2d 974
 Pedro Pablo BLANCO, F. and Jesus Vasquez Mancera, as
Trustees for Proyecfin de Venezuela, S.A.,
Plaintiffs-Appellees,
Inversiones Eufrates, S.A., Inversiones Gusanca, C.A.,
Plaintiffs-Intervenors-Appellants,
v.
BANCO INDUSTRIAL DE VENEZUELA, S.A., Defendant-Appellee.
 No. 242, Docket 92-7523.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 21, 1992.
Decided April 30, 1993.
As Amended June 10, 1993.
 
 Stuart L. Potter, New York City (David J. McCarthy, Butler, Fitzgerald & Potter, of counsel), for plaintiffs-appellees Pedro Pablo Blanco, F. and Jesus Vasquez Manera, as Trustees for plaintiff-appellee Proyecfin De Venezuela, S.A.
 Sidney B. Silverman, New York City (Jay H. Schafrann, Joan T. Harnes, Harold B. Obstfeld, John F. Harnes, Silverman, Harnes, Obstfeld & Harnes, of counsel), for plaintiffs-intervenors-appellants Inversiones Eufrates, S.A. and Inversiones Gusanca, C.A.
 Janis M. Meyer, New York City (P.B. Konrad Knake, Henry Diamond, White & Case, of counsel), for defendant-appellee Banco Industrial De Venezuela, C.A.
 Before: OAKES, NEWMAN, and MAHONEY, Circuit Judges.
 MAHONEY, Circuit Judge:
 
 
 1
 This is an appeal from a judgment entered April 8, 1992 in the United States District Court for the Southern District of New York, Vincent L. Broderick, Judge, that dismissed this action on forum non conveniens grounds, and from an order of that court entered May 4, 1992 that adhered to that judgment upon reargument, 141 B.R. 25.
 
 
 2
 The district court ruled that the Southern District of New York was an inconvenient forum to resolve a contract dispute between Venezuelan entities in a litigation commenced in the Supreme Court of the State of New York, County of New York, pursuant to a contractual provision permitting legal proceedings to be brought in the state courts of New York or federal courts located in New York, and removed to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1441(d).
 
 
 3
 We modify, and affirm as modified, the judgment of the district court, and remand for further proceedings.
 
 Background
 
 4
 This action arises out of the construction and development of a large, privately owned, residential apartment development in Maracay, Venezuela (the "Project"). On March 19, 1980, Proyecfin de Venezuela, S.A., a construction contractor, and a number of its subsidiaries (collectively "Proyecfin"), together with defendant-appellee Banco Industrial de Venezuela, S.A. ("BIV"), a Venezuelan bank whose outstanding stock is predominantly owned by the government of Venezuela, entered into an agreement (the "Loan Agreement") with a consortium of Middle East banks (the "Consortium"), not party to this action, under which the Consortium agreed to lend Proyecfin $43 million for the construction of the Project. The amount of the loan was subsequently increased to $63 million. BIV guaranteed Proyecfin's obligations under the Loan Agreement. BIV and Proyecfin also entered into an agreement (the "Supervisory Agreement") by which BIV undertook to: (1) act as trustee of all funds advanced by the Consortium for the Project; (2) make progress payments to Proyecfin based upon the progress of construction; and (3) monitor Proyecfin's performance.
 
 
 5
 Section 30(A) of the Loan Agreement (the "Forum Provision") states:
 
 
 6
 [Proyecfin and BIV agree] that any legal action or proceedings arising out of or in connection with this Agreement may be brought [emphasis added] in the High Court of Justice in England, the Courts of the State of New York, the Courts of the United States of America in New York or the Courts of the City of Caracas, Venezuela, irrevocably submit[ ] to the jurisdiction of each such court and agree[ ] that any writ, judgment or other notice of legal process shall be sufficiently served on [them] (i) in connection with proceedings in England, if delivered to the Law Debenture Corporation, Limited at Estates House, 66 Gresham Street, London, EC2V 7HX or its other registered office for the time being and (ii) in connection with proceedings in New York, if delivered to CT Corporation System at 277 Park Avenue, New York, N.Y. 10017, U.S.A. or [its other] principal place of business in New York for the time being.
 
 
 7
 In addition, the Loan Agreement contains implementing provisions regarding issuance of process, enforcement and execution of court orders and judgments, and waiver of any immunity therefrom, specifically including (in the case of actions in state or federal courts in New York) any immunity provided by the Foreign Sovereign Immunities Act of 1976 (the "FSIA"), Pub.L. No. 94-583, 90 Stat. 2891 (codified as amended in scattered sections of 28 U.S.C.). The Loan Agreement also provides that it is to be "governed by and construed in accordance with English law," and "signed in the English language and subsequently translated into the Spanish language[,] provided however that in the event of any conflict arising as to the interpretation of any provision the English version shall prevail." It further specifies that "[t]he dollar is the currency of account ... hereunder," and that payments thereunder are to be made in New York City.
 
 
 8
 The Supervisory Agreement stipulates that the Loan Agreement, "together with all its annexes, is understood to be fully reproduced herein and is considered to form part of this contract." It also contains the following provision (the "Caracas Provision"): "For all purposes deriving from this contract, the city of Caracas, Venezuela, is chosen as special and exclusive domicile, to whose Court the parties expressly agree to submit."
 
 
 9
 Proyecfin sought protection in a Venezuelan bankruptcy court (the "Bankruptcy Court") in December 1983, allegedly as a result of BIV's failure to make required payments to Proyecfin pursuant to, and other breaches of, the Supervisory Agreement. By orders dated December 13, 1983, the Bankruptcy Court permitted Proyecfin to operate as a debtor-in-possession under the Bankruptcy Court's supervision. Proyecfin subsequently commenced a separate action against BIV in a Venezuelan court in January 1984. This action has not been prosecuted. Proyecfin contends that the Venezuelan court in which the action was filed frustrated its prosecution by refusing to order service of process, resulting in Proyecfin's decision to sue BIV in New York.
 
 
 10
 Proyecfin commenced the instant action against BIV in the Supreme Court of the State of New York, County of New York, on July 3, 1984, claiming that BIV had withheld from Proyecfin funds and documentation necessary for the sale of completed housing units, in violation of the Supervisory Agreement, and also charging breach of fiduciary duty, conversion, and wrongful exaction of fees and interest. BIV removed the action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1441(d) (1988).
 
 
 11
 The district court then dismissed the action sua sponte for lack of subject matter jurisdiction, and an appeal was taken to this court. Our opinion on that appeal is reported as Proyecfin de Venezuela, S.A. v. Banco Industrial de Venezuela, S.A., 760 F.2d 390 (2d Cir.1985) ("Proyecfin I "), familiarity with which is assumed.
 
 
 12
 In Proyecfin I, we reversed the district court's ruling on subject matter jurisdiction. We determined that the Forum Provision of the Loan Agreement was incorporated by reference in the Supervisory Agreement as a result of the latter's wholesale adoption of the Loan Agreement. 760 F.2d at 393. We then held that: (1) BIV, an instrumentality of the Venezuelan government, had contractually waived its sovereign immunity from litigation in the United States in accordance with 28 U.S.C. 1605(a) (1982), a provision of the FSIA; (2) BIV had contractually agreed (via the Forum Provision)[1] to be sued in New York and thus had consented to jurisdiction here; and (3) BIV had not waived its right to remove the action to federal court. 760 F.2d at 397. We also noted that:
 
 
 13
 We are not concerned that United States courts will become the courts of choice for local disputes between foreign plaintiffs and foreign sovereign defendants and thus be reduced to "international courts of claims". Verlinden [B.V. v. Central Bank of Nigeria, 461 U.S. 480, 490, 103 S.Ct. 1962, 1969, 76 L.Ed.2d 81 (1983) ]. The traditional doctrine of forum non conveniens is still applicable in cases arising under the [FSIA]. Appellee, of course, may raise that issue in the district court on remand from this Court.
 
 
 14
 760 F.2d at 394 (citations partially omitted).
 
 
 15
 Subsequently, on September 15, 1985, Proyecfin sought a continuation of its debtor-in-possession status from the Bankruptcy Court. The Attorney General of Venezuela objected to Proyecfin's motion, and requested that the Bankruptcy Court appoint trustees to supervise the liquidation of Proyecfin. On November 14, 1986, after consulting with Proyecfin's creditors, the court granted the Attorney General's request and appointed two provisional trustees, Pedro Pablo Blanco, F. and Jesus Alberto Vasquez Mancera (the "Trustees"), the plaintiffs-appellees herein. On June 9, 1987, although BIV had requested the confirmation of only one trustee, Mr. Blanco, both Trustees were confirmed as final trustees by the Bankruptcy Court.
 
 
 16
 BIV thereafter submitted to the Bankruptcy Court a proof of claim amounting to $445,037,740 for guarantee payments made to the Consortium pursuant to the Loan Agreement, advances to Proyecfin pursuant to the Supervisory Agreement, and independent direct loans made by BIV to Proyecfin, plus interest accruing on these debts, paralleling counterclaims asserted by BIV in the instant action. The Trustees opposed BIV's proof of claim on various grounds and submitted various setoff claims on behalf of Proyecfin, including a claim for approximately $7,200,000 representing expenses incurred by Proyecfin in furtherance of the Project. Proyecfin submitted a more extensive opposition to all the BIV claims. After an evidentiary hearing, the Bankruptcy Court upheld most of BIV's claims and rejected Proyecfin's setoff claim. Proyecfin did not appeal this determination.[2]
 
 
 17
 Meanwhile, in the United States, BIV moved in the district court (after the remand in Proyecfin I ) for dismissal of this action on the basis of forum non conveniens. By order entered October 8, 1986, the district court denied that motion, opining that "[t]he forum, language, and choice of law provisions contained in the [Loan Agreement] and the international nature of the contract suggest that plaintiff's choice of forum not be disturbed."
 
 
 18
 The Trustees then moved in the district court to be substituted as parties plaintiff on behalf of Proyecfin, while Inversiones Eufrates, S.A. and Inversiones Gusanca, C.A., the holders of Proyecfin's outstanding stock and plaintiffs-intervenors-appellants herein (the "Intervenors"), moved to intervene as plaintiffs in the litigation. On August 23, 1989, the district court granted both motions.
 
 
 19
 On November 29, 1989, the Trustees moved to dismiss the action pursuant to the "inherent authority" of the court or Fed.R.Civ.P. 41(a)(2), or alternatively for a stay of all proceedings until final determination of the Venezuelan bankruptcy proceedings. In response, by memorandum order entered April 3, 1992, the district court dismissed the action on the basis of forum non conveniens. The court reasoned that because of the substitution of the Trustees and intervention of the Intervenors in the aftermath of the court's prior denial of BIV's motion to dismiss for forum non conveniens, "[t]he principal issues presently in dispute concern whether shareholder derivative actions, or direct shareholder suits against third parties or trustees, are permissible in this case." The court also noted that Proyecfin, no longer a debtor-in-possession, was undergoing liquidation in the Bankruptcy Court. The court concluded that:
 
 
 20
 This lawsuit involves almost exclusively the conduct and workings of a Venezuelan public corporation and its relationship with other Venezuelan nationals and public sector entities. The lawsuit can no longer be conveniently handled in the United States without running the risk of prejudicing the orderly processing of the Venezuelan bankruptcy proceeding.
 
 
 21
 A judgment dismissing the complaint was accordingly entered on April 8, 1992, and the Intervenors moved for reargument. By memorandum order entered May 4, 1992, the district court granted reargument, but adhered to its prior decision. The court noted that both the original plaintiff and the original defendant in the action were at that juncture seeking dismissal, and that "Venezuelan law predominates as to every aspect of this litigation ..., ... especially as a result of Intervenors seeking to raise derivative claims...."[3]
 
 
 22
 This appeal by the Intervenors followed.
 
 Discussion
 
 23
 We note at the outset that forum non conveniens determinations are "committed to the sound discretion of the trial court ... [and] may be reversed only when there has been a clear abuse of discretion." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981); see also R. Maganlal & Co. v. M.G. Chemical Co., 942 F.2d 164, 167 (2d Cir.1991) ("A district court has broad discretion in deciding whether to dismiss an action on grounds of forum non conveniens.") (citing Piper Aircraft, 454 U.S. at 257, 102 S.Ct. at 267).
 
 
 24
 The Intervenors claim on appeal that the Forum Provision, combined with their selection of a New York forum, is virtually dispositive in their favor with respect to the forum non conveniens issue; and further, that they are entitled to prevail on that issue under the considerations generally applicable to the resolution of forum non conveniens questions. We proceed to address these contentions, and also to discuss the addition of an appropriate condition to the district court's forum non conveniens dismissal.
 
 
 25
 A. The Forum Provision.
 
 
 26
 In view of our treatment of the pertinent contractual provisions in Proyecfin I, only the Forum Provision of the Loan Agreement, incorporated by reference in the Supervisory Agreement upon which Proyecfin's claims against BIV are founded, bears upon the issue presented to us for decision. The only arguably relevant clause of the Supervisory Agreement (considered separately) is the Caracas Provision, which could be read as compelling any litigation regarding the Supervisory Agreement to be conducted in Venezuela, and in any event lends no independent support to the conduct of such litigation in New York. As we have noted, however, Proyecfin I determined that the Caracas Provision is to be read as consistent with the Forum Provision's authorization of litigation in fora other than Venezuela. See supra note 1.
 
 
 27
 In Proyecfin I, we described the Forum Provision as a "forum selection clause." 760 F.2d at 397. We emphasized, however, that the Forum Provision was permissive in its language ("may be brought"), and "le[ft] open the possibility that an action could be brought in any forum where jurisdiction can be obtained either inside or outside of Venezuela." Id. at 396. The permissive nature of the clause is not strengthened by the sort of language used in the agreement in Credit Francais Int'l, S.A. v. Sociedad Financiera de Comercio, C.A., 128 Misc.2d 564, 490 N.Y.S.2d 670 (Sup.Ct.1985); that clause, while identifying fora in which suit "may" be brought, added both the defendant's "irrevocabl[e] consent[ ]" to suit in those designated fora at the plaintiff's election and the defendant's waiver of forum non conveniens objections. See id. at 567, 490 N.Y.S.2d at 674.
 
 
 28
 It is thus clear that the Forum Provision is not at all comparable to the clause addressed in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), a case on which the Intervenors strongly but unavailingly rely on this appeal. In Bremen, the governing contract stated that "[a]ny dispute arising must be treated before the London Court of Justice." Id. at 2, 92 S.Ct. at 1909 (emphasis added). In interpreting this provision, the Court concluded that "the forum clause should control absent a strong showing that it should be set aside," id. at 15, 92 S.Ct. at 1916; i.e., unless the party who sought to escape application of the clause "could clearly show that [its] enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." Id.
 
 
 29
 The Intervenors contend that the Forum Provision constitutes a concession that all fora included therein are convenient to the parties, with the result that once a party institutes an action in any of them, the opposing party must make a Bremen showing to gain a forum non conveniens dismissal. We disagree.
 
 
 30
 Unlike the clause at issue in Bremen, the Forum Provision is properly construed as a permissive consent-to-jurisdiction provision, and not a mandatory and exclusive forum selection clause. We reach this conclusion solely because of the nonmandatory words the parties chose to express their agreement, and not, as the dissent apprehends, because the permissive clause contemplates more than one forum. As we discuss infra, a plaintiff's choice of forum is always entitled to considerable deference, but we reject the Intervenors' contention that, in addition, their invocation of the Forum Provision is entitled to the extra protection that Bremen accords to mandatory forum selection clauses.
 
 
 31
 Rather, as Proyecfin I intimated, 760 F.2d at 394, normal forum non conveniens analysis is applicable here. See Banco Metropolitano, S.A. v. Desarrollo de Autopistas y Carreteras de Guatemala, Sociedad Anonima, 616 F.Supp. 301, 304-05 (S.D.N.Y.1985) (normal forum non conveniens analysis, rather than Bremen standard, applied to forum selection clause deemed permissive rather than mandatory) (citing Proyecfin I ). We accordingly proceed to address the forum non conveniens issue in terms of the generally applicable standards, rather than the heightened scrutiny required by Bremen for mandatory forum selection clauses.
 
 
 32
 B. Generally Applicable Standards.
 
 
 33
 The leading case in this area is Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). In addition, the Supreme Court provided an extensive gloss upon Gilbert's teaching in Piper Aircraft.
 
 
 34
 Piper Aircraft cited Gilbert and its companion case, Koster v. Lumbermens Mut. Casualty Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), for the proposition that "a plaintiff's choice of forum should rarely be disturbed." Piper Aircraft, 454 U.S. at 241, 102 S.Ct. at 258. As the phrasing of this formulation indicates, however, the plaintiff's selection will not invariably be upheld, or there would be no forum non conveniens doctrine to consider. Indeed, the plaintiff's choice was overturned in Gilbert, Koster, and Piper Aircraft.
 
 
 35
 Gilbert also establishes that an adequate alternative forum must be available in order for a case to be dismissed on the basis of forum non conveniens. 330 U.S. at 506-07, 67 S.Ct. at 842; see also Piper Aircraft, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22. Finally, Gilbert articulated a number of private interest and public interest factors as relevant to forum non conveniens determinations. Piper Aircraft summarized them in these terms:
 
 
 36
 The factors pertaining to the private interests of the litigants included the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Gilbert, 330 U.S., at 508, 67 S.Ct., at 843. The public factors bearing on the question included the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. Id. at 509, 67 S.Ct., at 843.
 
 
 37
 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6; see also Borden, Inc. v. Meiji Milk Prods. Co., 919 F.2d 822, 827-28 (2d Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2259, 114 L.Ed.2d 712 (1991).
 
 
 38
 We proceed to address the relevant considerations as outlined in Gilbert and Piper Aircraft.
 
 
 39
 1. Proyecfin's Initial Selection of a New York Forum.
 
 
 40
 As discussed supra, considerable deference must be accorded a plaintiff's choice of a forum, but the Forum Provision does not impart any special significance to Proyecfin's initial selection of a New York forum. Further, it is noteworthy that the Trustees have consistently sought the dismissal of this action since being substituted as parties plaintiff on behalf of Proyecfin. Cf. In re Union Carbide Corp. Gas Plant Disaster, 809 F.2d 195, 202 (2d Cir.) (little or no deference due to choice of United States forum by Indian plaintiffs who had revoked authorization of American counsel to represent them and substituted Indian government, which preferred Indian courts), cert. denied, 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150 (1987).
 
 
 41
 In addition, Piper Aircraft stated that "[b]ecause the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference." 454 U.S. at 256, 102 S.Ct. at 266. We have ruled, however, that when a treaty with a foreign nation accords its nationals access to our courts equivalent to that provided American citizens, identical forum non conveniens standards must be applied to such nationals by American courts. See Irish Nat'l Ins. Co. v. Aer Lingus Teoranta, 739 F.2d 90, 91-92 (2d Cir.1984); Alcoa S.S. Co. v. M/V Nordic Regent, 654 F.2d 147, 152-53 (2d Cir.) (in banc), cert. denied, 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980); Farmanfarmaian v. Gulf Oil Corp., 588 F.2d 880, 882 (2d Cir.1978). Because such a treaty exists between the United States and Venezuela, see Treaty of Peace, Friendship, Navigation and Commerce, Jan. 20, 1836, U.S.-Venez., art. 13, 8 Stat. 466, 472, no discount may be imposed upon the plaintiff's initial choice of a New York forum in this case solely because Proyecfin is a foreign corporation.
 
 
 42
 As Gilbert made clear, however, a plaintiff's choice of forum may be overturned when "the balance [of relevant considerations] is strongly in favor of the defendant." 330 U.S. at 508, 67 S.Ct. at 843; see also Farmanfarmaian, 588 F.2d at 881-82 (dismissing suit by Iranian national on the basis of forum non conveniens despite treaty that mandated court access equivalent to American citizen). For the reasons that follow, we find that the presence of an adequate Venezuelan forum, and the strong adverse balance of Gilbert private and public factors, outweigh the initial choice by Proyecfin of a New York forum, and the Intervenors' continuing effort to adopt that selection.
 
 
 43
 2. Adequacy of Alternate Forum.
 
 
 44
 As we have noted, Gilbert requires that there be an adequate alternative forum in order for a forum non conveniens dismissal to be granted. 330 U.S. at 506-07, 67 S.Ct. at 842. The Court further explained in Piper Aircraft:
 
 
 45
 Ordinarily, this requirement will be satisfied when the defendant is "amenable to process" in the other jurisdiction. Gilbert, 330 U.S., at 506-507, 67 S.Ct., at 842. In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied.
 
 
 46
 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22.
 
 
 47
 The Intervenors contend that such "rare circumstances" are presented here. They claim that: (1) systemic corruption, delay and expense in the Venezuelan justice system, as well as political instability in that country, result in endemic unfairness to litigants; and (2) because one of the Trustees was nominated by BIV, and because of BIV's ownership by the Venezuelan government, Proyecfin's claims will not be actively pressed in Venezuela and Venezuelan courts will be biased in favor of BIV.
 
 
 48
 The Intervenors support their general attack on the Venezuelan justice system with: (1) an affidavit of their cocounsel in this case dated September 18, 1985 that describes both systemic deficiencies in the Venezuelan system of justice and specific difficulties experienced in Proyecfin's pursuit of its claims herein in the courts of Venezuela; (2) an affidavit dated November 1, 1983 submitted by a Venezuelan attorney in another case in which BIV was a defendant that portrays the problems of a foreign bank seeking a judgment against BIV in terms of Venezuelan hostility to such foreign suitors, systemic antipathy to decisions adverse to the interests of the Venezuelan government, and general deficiencies in the Venezuelan system of justice; and (3) a series of newspaper articles appearing from February to April 1992 that depict the political unrest in Venezuela at that time.
 
 
 49
 We are not persuaded by these protestations. It is at least anomalous for a Venezuelan corporation to contract with a Venezuelan bank for the financing of a housing project in Venezuela, specify in both pertinent contracts that litigation concerning them may be brought in Venezuela, and then argue to an American court that the Venezuelan system of justice is so endemically incompetent, biased, and corrupt as not to provide an adequate forum for the resolution of such contractual disputes. We note in this regard a number of cases that have explicitly or implicitly concluded that Venezuela is an adequate alternative forum for purposes of forum non conveniens rulings. See, e.g., Hernandez v. Naviera Mercante, C.A., 716 F.Supp. 939, 943 n. 5 (E.D.La.1989) (Venezuelan courts constitute adequate alternative forum for purposes of forum non conveniens) (collecting cases); C.A. Seguros Orinoco v. Naviera Transpapel, C.A., 677 F.Supp. 675, 685 (D.P.R.1988) (Venezuela "a competent alternative forum"); Villalobos v. Loffland Bros. Co., 507 F.Supp. 904, 907 (S.D.N.Y.1981) (forum non conveniens dismissal in favor of litigation in Venezuela); Iberian Tankers Co. v. Terminales Maracaibo, C.A., 322 F.Supp. 73, 74-75 (S.D.N.Y.1971) (same).
 
 
 50
 Further, as we recently stated in Borden, 919 F.2d at 829, " 'some inconvenience or the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate' " (quoting Shields v. Mi Ryung Constr. Co., 508 F.Supp. 891, 895 (S.D.N.Y.1981)); see also Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 768 (9th Cir.1991) (lack of trial by jury does not render Japan inadequate forum); Union Carbide, 809 F.2d at 198-99, 202-03 (India held adequate alternative forum despite procedural and substantive "disadvantages"); Alcoa, 654 F.2d at 159 (inadequacy of alternative forum not established by prospect of lesser recovery); cf. Transunion Corp. v. Pepsico, Inc., 811 F.2d 127, 129 (2d Cir.1987) (political unrest not automatic bar to forum non conveniens dismissal). In addition, we have repeatedly emphasized that " '[i]t is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation.' " Chesley v. Union Carbide Corp., 927 F.2d 60, 66 (2d Cir.1991) (quoting Jhirad v. Ferrandina, 536 F.2d 478, 484-85 (2d Cir.), cert. denied, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976)).
 
 
 51
 In the instant case, the Bankruptcy Court adjudicated BIV's proof of claim and Proyecfin's setoff claim following a full evidentiary hearing. While no appeal was taken from this determination, the liquidation order was appealed, and the Supreme Court of Venezuela remanded to an intermediate appellate court for further proceedings. See supra note 2. No convincing showing has been made of those "rare circumstances" that render the proposed alternative forum "clearly unsatisfactory." Piper Aircraft, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22.
 
 
 52
 We turn to a consideration of the Gilbert private interest and public interest factors.
 
 
 53
 3. Private Interest Factors.
 
 
 54
 As indicated earlier in this opinion, the Gilbert private interest factors include:
 
 
 55
 the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.
 
 
 56
 330 U.S. at 508, 67 S.Ct. at 843. It is clear that these considerations point strongly toward Venezuela as a more convenient forum than the Southern District of New York in this case.
 
 
 57
 The sole connection to the local forum of this dispute between Venezuelan litigants forum is the fact that payments under the Loan Agreement were to be made in dollars in New York City. This case, however, involves the Loan Agreement only indirectly, and is directed to alleged breaches of the Supervisory Agreement. Virtually all of the sources of proof are located in Venezuela. These include the books and records of Proyecfin, as well as approximately 20,000 documents in BIV's possession in Caracas. Similarly, most, if not all, of the witnesses whose testimony would be required are located in Venezuela; there is no process available to compel their appearance in New York, which in any event would entail considerable expense.
 
 
 58
 Further, the documentary evidence is in the Spanish language, as would be trial or deposition testimony, requiring translation to English that would result in significant cost to the parties and delay to the court. This factor militates strongly in favor of Venezuela as a more appropriate forum for this litigation. See Schertenleib v. Traum, 589 F.2d 1156, 1165 (2d Cir.1978) (dismissing on forum non conveniens grounds because, inter alia, witnesses located in Switzerland and relevant documents written in French); Fitzgerald v. Texaco, Inc., 521 F.2d 448, 451-52 (2d Cir.1975) (same, witnesses in United Kingdom), cert. denied, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976).
 
 
 59
 Finally, a major component of this dispute is whether BIV wrongfully withheld progress payments on the Project. It follows that a view of the premises to determine the progress of the construction relative to BIV's payments is not only "appropriate," Gilbert, 330 U.S. at 508, 67 S.Ct. at 843, but essential. Accordingly, all the private interest factors enunciated in Gilbert support the propriety of the district court's dismissal on the basis of forum non conveniens.
 
 
 60
 4. Public Interest Factors.
 
 
 61
 As we have noted, Gilbert also commands inquiry into relevant public interest factors. Id. These considerations include "a local interest in having localized controversies decided at home," and the appropriateness of having a case heard in a forum "at home with the ... law that must govern the case." 330 U.S. at 509, 67 S.Ct. at 843; see also Overseas Nat'l Airways, Inc. v. Cargolux Airlines Int'l, S.A., 712 F.2d 11, 14 (2d Cir.1983) ("The public interest factors include the remoteness of the forum from the situs of the event, and the forum court's need to rely upon foreign law."). These concerns point clearly to Venezuela as the preferable forum to resolve this litigation.
 
 
 62
 The Intervenors have advanced both derivative claims, in their capacity as shareholders of Proyecfin, and direct claims against BIV. It is unclear whether shareholder derivative actions may be maintained in Venezuela. See Hausman v. Buckley, 299 F.2d 696, 698 & n. 5 (2d Cir.) (stockholders not entitled to bring derivative action under law of Venezuela), cert. denied, 369 U.S. 885, 82 S.Ct. 1157, 8 L.Ed.2d 286 (1962). Counsel for the Trustees contended at oral argument that the Intervenors may maintain their direct claims in the Supreme Court of Venezuela (by virtue of the Venezuelan government's ownership of BIV), and that they may advance their derivative claims by requesting that the Bankruptcy Court issue an order directing the Trustees to sue BIV in the Supreme Court of Venezuela, a proceeding in which the Intervenors might participate.
 
 
 63
 The district court was entitled to conclude that such questions of Venezuelan substantive and procedural law are better addressed by Venezuelan courts. Further, given the absence of any United States parties or interests in this litigation, considerations of comity weigh heavily in favor of noninterference with ongoing foreign judicial proceedings. See Hilton v. Guyot, 159 U.S. 113, 163-66, 16 S.Ct. 139, 143-44, 40 L.Ed. 95 (1895) (general discussion of comity); see also Chesley, 927 F.2d at 66-67 (declining to award attorney fees in the United States that would affect settlement fund established in India for litigation pending in that nation) (citing Hilton, 159 U.S. at 164, 16 S.Ct. at 143). Accordingly, we conclude that the Gilbert public factors support the lower court's dismissal on forum non conveniens grounds.
 
 
 64
 C. Imposition of Conditions upon Forum Non Conveniens Dismissal.
 
 
 65
 The Bankruptcy Court appointed two Trustees, despite BIV's position that Pedro Pablo Blanco, F. should be the sole Trustee. Intervenors plausibly contend, however, that neither of the incumbent Trustees is responsive to their interests.
 
 
 66
 In view of the Intervenors' legitimate interest in having at least one Trustee who is responsive to their interests and is not a designee of BIV, we will modify the district court's dismissal to provide as a condition that BIV join the Intervenors in proposing to the Bankruptcy Court a mutually acceptable successor Trustee to Mr. Mancera, such acceptance by BIV and the Intervenors not to be unreasonably withheld. Further, because our affirmance of the district court's dismissal is premised upon the existence of an adequate alternative forum in Venezuela, we add the additional condition that if the Bankruptcy Court declines to appoint the proposed Trustee, or if, following such appointment, the Trustees do not thereafter, within a reasonable time, make a meaningful effort to pursue Proyecfin's claims against BIV in the courts of Venezuela, the Intervenors will be entitled to reinstate this action in behalf of Proyecfin in the United States District Court for the Southern District of New York.
 
 
 67
 This course is especially appropriate because the forum non conveniens dismissal herein occurs so late in this litigation. The delay cannot be attributed to BIV, which moved for a forum non conveniens dismissal promptly following the remand in Proyecfin I, or to the Trustees, who brought the motion that resulted in this appeal promptly after their substitution as plaintiffs in this action. It is nonetheless a factor which argues in favor of some protection for the Intervenors' interest.
 
 
 68
 Further, forum non conveniens dismissals are often appropriately conditioned to protect the party opposing dismissal. See, e.g., Sussman v. Bank of Israel, 990 F.2d 71, 71 (2d Cir.1993) (per curiam) (affirming district court's forum non conveniens dismissal conditioned upon defendants' partial waiver of limitations defense and undertaking from Israeli officials that plaintiff would not be detained if he went to Israel to initiate litigation in that alternative forum); R. Maganlal & Co., 942 F.2d at 167 (defendant agreed to dismissal conditioned upon submission to jurisdiction of foreign court); Borden, 919 F.2d at 829 (forum non conveniens dismissal conditioned upon foreign forum's acting upon plaintiff's request for injunction within specified time frame); Union Carbide, 809 F.2d at 203-04 (affirming district court's dismissal on condition that defendant consent to personal jurisdiction and waive statute of limitations defense in foreign forum) (collecting cases); Constructora Spilimerg, C.A. v. Mitsubishi Aircraft Co., 700 F.2d 225, 226 (5th Cir.1983) (forum non conveniens dismissal in favor of Venezuelan court conditioned upon defendant's acceptance of service of process, waiver of objections to personal jurisdiction, and undertaking to effectuate Venezuelan judgment).
 
 Conclusion
 
 69
 We modify the judgment of the district court to condition dismissal upon BIV and the Intervenors jointly proposing to the Venezuelan Bankruptcy Court a mutually acceptable successor Trustee to Jesus Vasquez Mancera, such acceptance by BIV and the Intervenors not to be unreasonably withheld. Further, if the Bankruptcy Court declines to appoint the proposed Trustee, or if, following such appointment, the Trustees do not thereafter, within a reasonable time, make a meaningful effort to pursue Proyecfin's claims against BIV in the courts of Venezuela, the Intervenors will be entitled to reinstate this action in behalf of Proyecfin in the United States District Court for the Southern District of New York. We affirm the judgment of the district court, as modified, and remand for further proceedings not inconsistent with this opinion. The parties shall bear their own costs.
 
 OAKES, Circuit Judge, dissenting:
 
 70
 The majority answers the question affirmatively by implication whether the intervenor stockholders of Proyecfin have standing. With that I do not disagree. But the majority then goes on to apply the disabling (and, I continue to think in 1993 as I did in 1975,[1] in many ways antiquated) doctrine of forum non conveniens to bar the litigation in the United States after nine years, nine months[2] here. Since the majority does so by failing to apply the critical Supreme Court case on the subject, I dissent.
 
 
 71
 The majority answers negatively and quite correctly the question whether the "Caracas Provision" in the Supervisory Agreement (a provision construed as a venue provision only in Proyecfin I, 760 F.2d at 395-96, majority op. n. 1) trumps the "forum provision" in the Loan Agreement, which was incorporated in the Supervisory Agreement by reference. But the majority then re-names the forum provision, described appropriately as a "forum selection clause" in Proyecfin I, 760 F.2d at 397, a "consent-to-jurisdiction provision," maj. op. at 980. With this change in nomenclature, the majority then goes on to hold the clause permissive (in that it permits suit to be maintained in London, New York or Caracas) rather than mandatory, like the clause in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), and reasons from this that the clause may be set aside and New York declared an inconvenient forum. This to my mind is specious.
 
 
 72
 What difference does it make if the parties contract to have one, two or three different fora as convenient and then sue in one of them rather than contract to have only one forum? Surely, the Bremen decision's respect for, and weight given to, the forum selection clause there was not based in any respect on the fact that only one forum was selected by the parties there.[3] At least nothing in the Bremen opinion even intimates that to have been the case. Certainly, logic does not take us to the majority conclusion, either.
 
 
 73
 Instead, Bremen gave weight to the Commentators, to the American Law Institute (Restatement (Second) of the Conflict of Laws § 80 (1971)), to the National Conference of Commissioners on Uniform State Laws and to the law of other common law countries. 407 U.S. at 11 and nn. 12-13, 92 S.Ct. at 1913 and nn. 12-13. See 15 Charles A. Wright, et al., Federal Practice and Procedure § 3803.1 (2d ed. 1986) for an exegesis of the strong trend since Bremen toward the enforcement of forum-selection clauses. See also Restatement (Second) of Conflict of Laws App. 263, et seq. (collecting decided cases pertaining to § 80). While Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) has made it clear that in ruling on motions to transfer venue under 28 U.S.C. § 1404(a), forum-selection clauses are not to be given either "dispositive consideration" or "no consideration," id. at 31, 108 S.Ct. at 2245, nothing in Stewart hints that because the parties have chosen to select alternate fora, the clause is to be given any the less effect than where one forum only is selected.
 
 
 74
 Having arrived at this specious premise (that an alternative forum-selection clause is "permissive" and therefore to have less weight than a mandatory or exclusive clause), the majority then goes on to give the clause here no weight at all and to analyze the case in good old-fashioned Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), and Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), forum non conveniens terms, adding that "the plaintiff's choice was overturned" in all three cases (maj. op. at 980-81). Of course, none of the three involved a forum-selection clause at all; the question each involved was simply whether the place where the plaintiff had sued was a more convenient place for trial than some other place. Since the cases did not involve forum-selection clauses at all, the list of "private interest factors" and "public interest factors" on which those cases relied, as set forth in Gilbert, 330 U.S. at 508-09, 67 S.Ct. at 843, and relied on in Piper Aircraft, 454 U.S. at 241 & n. 6, 102 S.Ct. at 258 & n. 6, do not involve the real Bremen question before us: whether a forum-selection clause is plainly unreasonable, that is, whether "enforcement [of it] would be unreasonable and unjust" or whether the clause is "invalid for such reasons as fraud or overreaching," 407 U.S. at 15, 92 S.Ct. at 1916, or whether "trial in the contractual forum will be so gravely difficult and inconvenient that [the resisting party] will for all practical purposes be deprived of his day in court," 407 U.S. at 18, 92 S.Ct. at 1917. Thus, the majority does not look at the helpful list of nine factors to determine reasonableness set forth in then District Judge Bruce M. Selya's 1983 decision, D'Antuono v. CCH Computax Sys., Inc., 570 F.Supp. 708, 712 (D.R.I.1983),[4] relied on in 15 Charles A. Wright, et al., supra, § 3803.1 at 21-22. The list, with its "totality of the circumstances" caveat directs us toward a qualitative evaluation of the factual circumstances involved, id. at 22-23.
 
 
 75
 Having resolved to decide the case by the wrong set of rules, as if no forum-selection clause were involved at all, the majority's application of the rules makes good, even persuasive, sense. What is a close case then becomes an easy one.
 
 
 76
 I come out with a totally different result when I apply the Bremen balancing standard, however. Weighing in favor of not giving force to the forum-selection clause, to be sure, are the following: Venezuela is where the housing project was to be built, where the defendants are located, where it is most convenient to prospective witnesses (though in 1993 I do not think this is particularly significant), and where the probable documentary evidence involved is most accessible, and Venezuelan law will no doubt determine the question whether Proyecfin is a bankrupt, which may be relevant. Weighing in favor of giving effect to the forum-selection clause and hence permitting suit to proceed where the plaintiff chose nearly a decade ago to proceed are, however, the following: the loan agreement, written in English, was signed in Paris; the loan agreement, written in English, was signed in Paris; the loan administrators were foreign banks (such as Barclays Bank International Limited); the indirect owners of Proyecfin were citizens of Spain; all loan progress payments made to Proyecfin and repayment by it of the loan were required to be made in dollars, in New York City, where the guarantor bank, BIV, conducts a large operation; the purpose of the forum-selection clause was to ensure that the international banks and financiers who were putting up the money for the project in question would not be at the mercy of BIV which was owned by Venezuela (hence, inter alia, the waiver of sovereign immunity in the loan agreement); the governing law was to be the law of England; there is more than just a hint that the courts of Venezuela may be oriented openly or sub rosa to the interests of the Venezuelan government, an indirect party to the litigation; and the Proyecfin trustees are now firmly on the side of the defendant BIV which the intervenors insist forced Proyecfin into bankruptcy for BIV's own ends.[5] Moreover, this case has been pending here for almost ten years, over two years going by without a decision on a motion to dismiss the intervenors for lack of standing. In short, the totality of the circumstances measured in the interests of justice, which Judge Selya's caveat would have us examine, convinces me that the qualitative factual circumstances here demand the suit not be dismissed.
 
 
 77
 I accordingly dissent.
 
 
 
 [1]
 We construed the Caracas Provision as providing the proper venue for any litigation brought in Venezuela pursuant to the Forum Provision, rather than overriding the Forum Provision's authorization of litigation in fora other than Venezuela. See 760 F.2d at 395-96
 
 
 [2]
 Proyecfin did appeal, however, a subsequent Bankruptcy Court decision that ordered Proyecfin's liquidation. On that appeal, the Supreme Court of Justice of the Republic of Venezuela (the "Supreme Court of Venezuela") determined on August 14, 1991 that an intermediate appellate court had improperly failed to rule upon the propriety of the Bankruptcy Court's consolidation of all of the petitions of the Proyecfin group of affiliated companies into one proceeding, and remanded for correction of that error. The Supreme Court of Venezuela also considered, and rejected, the contention that the intermediate appellate court had improperly failed to address the extension of the debtor-in-possession period
 
 
 [3]
 The district court also rejected the Intervenors' claim that the decision by the Supreme Court of Venezuela on the appeal of the Proyecfin liquidation order, see supra note 2, established that Proyecfin "presently ... [wa]s not in bankruptcy," and further ruled that the claim was tardily presented. Intervenors renew this contention on appeal, claiming that "the Venezuelan Supreme Court determined that Proyecfin had been improperly placed into liquidation and that the Trustees had been improperly appointed." To say the least, we are not persuaded that this is an accurate description of that ruling. See supra note 2
 
 
 [1]
 See Fitzgerald v. Texaco, Inc., 521 F.2d 448, 455-58 (2d Cir.1975) (dissenting opinion), cert. denied, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976). I there called for a reexamination of the entire doctrine "in the light of the transportation revolution" that had occurred between the Supreme Court's 1947 cases and 1975, 521 F.2d at 456. Today, I would add "in light of the communications/satellite/optics/data revolution that has also occurred since 1975."
 
 
 [2]
 This action against BIV was commenced in the Supreme Court of New York on July 3, 1984. See Proyecfin de Venezuela, S.A. v. Banco Industrial de Venezuela, S.A., 760 F.2d 390, 392 (2d Cir.1985) ("Proyecfin I ")
 
 
 [3]
 Rather, the Court, answering affirmatively the question whether a forum selection clause could be upheld though excluding U.S. courts and law as convenient, spoke of "ancient concepts of freedom of contract," 407 U.S. at 11, 92 S.Ct. at 1913, "historical judicial resistance," id. at 12, 92 S.Ct. at 1914, and "when businesses once essentially local now operate in world markets," id. I take it that when the original contracting parties here chose New York (and the United States courts, as well as the New York state courts) as one convenient forum and the United States Dollar as the convenient mode of payment, they did so because the consortium of Middle East banks that originally underwrote the Venezuelan project wanted the political stability of the United States and of England, and the reliability of their respective courts to be available as alternative fora, to the relatively less stable nation and perhaps less reliable court system of Venezuela
 
 
 [4]
 The D'Antuono factors consist of the following:
 
 
 [1]
 The identity of the law which governs the construction of the contract
 
 
 [2]
 The place of execution of the contract(s)
 
 
 [3]
 The place where the transactions have been or are to be performed
 
 
 [4]
 The availability of remedies in the designated forum
 
 
 [5]
 The public policy of the initial forum state.... a consideration perhaps uniquely applicable where, as here, federal jurisdiction is bottomed on diversity of citizenship
 
 
 [6]
 The location of the parties, the convenience of prospective witnesses, and the accessibility of evidence
 
 
 [7]
 The relative bargaining power of the parties and the circumstances surrounding their dealings
 
 
 [8]
 The presence or absence of fraud, undue influence or other extenuating (or exacerbating) circumstances
 
 
 [9]
 The conduct of the parties
 
 
 [570]
 F.Supp. at 712 (citations omitted)
 
 
 [5]
 The conditions imposed by the majority relative to appointment of a "mutually acceptable" replacement trustee and a "meaningful effort" on the trustees' part to pursue Proyecfin's claims in the courts of Venezuela, while seemingly mollifying the harshness of the dismissal, invite further litigation and delay and place the United States courts in a contra-comity posture of monitoring the Venezuelan courts. E.g., suppose the trustees as replaced make a settlement with BIV: must our courts determine whether the settlement is "meaningful"?